JOHN A. CAIN *v.* COUNTRY CLUB DELICATESSEN OF SAYBROOK, INC.

SUPERIOR COURT     MIDDLESEX COUNTY     FILE No. 16033

Memorandum filed July 24, 1964

*Norman Sivin,* of Saybrook, receiver.

*Ribicoff & Kotkin,* of Hartford, for The First Hartford Fund, Inc.

*Thomas C. Cambria,* of Middletown, for General Electric Credit Corporation.

PASTORE, J. This is a motion of the receiver for a determination of priorities and an order of distribution with relation to The First Hartford Fund, Inc., and General Electric Credit Corporation, secured creditors of the defendant, Country Club Delicatessen of Saybrook, Inc.

On order of court, the assets of defendant corporation were sold December, 1963, free and clear of liens and encumbrances, in accordance with the consent of the parties, and the entire proceeds of the sale were ordered held by the receiver in substitution for said property, subject however to such valid and enforceable security interests, liens and encumbrances as might exist against the property, to the extent and in such priority as might be determined by this court.

The claim of The First Hartford Fund, Inc., is for a principal sum of $35,000 plus interest, costs and attorneys' fees. The claim of General Electric Credit Corporation is for $23,835.90 plus interest and attorneys' fees. The remaining fund in the hands of the receiver is about $24,400, representing the net proceeds from the sale of all the assets of the defendant corporation after payment of certain other claims superior to those of the present claimants.

For convenience said parties may be referred to in this opinion as First Hartford and General Electric, respectively.

Defendant corporation opened its restaurant business in Old Saybrook on July 26, 1962. At that time it was fully equipped. Its assets included property subsequently purchased from Hewitt Engineering, Inc., referred to herein as Hewitt. On August 16, 1962, defendant corporation borrowed $35,000 from First Hartford, giving a promissory note secured by a chattel-mortgage type of security

agreement covering a security interest in "All goods, personal property, equipment, machinery, fixtures, inventory, leasehold rights, including, but not limited to, the property described below, including all after acquired property of like kind," and then follows an enumeration of specific items, as set forth in schedule A thereof.

The day previously, viz., August 15, 1962, First Hartford had filed a financing statement with the secretary of state, Uniform Commercial Code division, showing the defendant as debtor and First Hartford as the secured party. This financial statement had the same description as to property as did the security agreement mentioned above, and also contained a provision covering after-acquired property, and a description of the real estate and other data relating to requirements as to fixtures, in the event any of the property were fixtures. Also on August 15, 1962, First Hartford executed another financing statement, being a duplicate of the one filed in the office of the secretary of state, and filed it with the town clerk of the town of Old Saybrook. The description of the property was the same as in the financing statement filed with the secretary of state. Both these financing statements were executed by the defendant corporation.

On August 30, 1962, defendant corporation and Hewitt Engineering, Inc., executed a conditional sale contract covering property sold by Hewitt to defendant as described in schedule A, attached thereto. Some of this property is expressly mentioned in the financing statement and security agreement of the defendant with First Hartford, above mentioned. On August 30, 1962, a financing statement was filed with the town clerk of the town of Old Saybrook showing Hewitt Engineering, Inc., as the secured party, and General Electric as assignee of

Hewitt, and defendant corporation as debtor. The description of the types or items of property covered by it read: "Complete restaurant and delicatessen including kitchen equipment and display equipment."

No financing statement of either Hewitt Engineering, Inc., or General Electric was on file with either the secretary of state, Uniform Commercial Code division, or the town clerk of Old Saybrook against defendant corporation up to the time on August 15, 1962, when First Hartford first filed its financing statements respectively in both of said offices. Also, no financing statement of said Hewitt or General Electric was on file with the secretary of state up to September 23, 1962, when the instant proceeding was started.

Some of the property specifically mentioned in the conditional sale contract of Hewitt, assigned to General Electric, appears also in the description of the property covered by the financing statement and security agreement of First Hartford. On trial it was stipulated by these parties that substantially if not all of the items of property described in schedule A of the conditional sale contract of Hewitt were delivered by Hewitt to the defendant corporation or before July 26, 1962, and that if any of these items were not delivered on or before July 26, 1962, all of them were delivered to the defendant corporation "before August 19, 1962." It appeared also from testimony that all property of defendant corporation, including that concerned with the goods sold by Hewitt, was to be removed from the premises upon termination of the lease between defendant corporation and the owner of the land involved.

The position of First Hartford is that it was first to file, that it filed with the secretary of state so as to cover itself with respect to personal property, that it filed with the town clerk of Old Saybrook so as to

cover itself as to fixtures (if any be involved), and that General Electric, by failing to file with the secretary of state, does not have priority as to the personal property, and by filing when it did with said town clerk, acquired no rights superior to those of First Hartford in any fixtures, if any there were.

The claim of General Electric is that the evidence shows that as of August 15, 1962, when the financing statement of First Hartford was filed, and as of August 16, 1962, when its security agreement was made, the debtor defendant corporation had only possession of the property subsequently bought from Hewitt, the assignor of General Electric; that there is no evidence showing that as of those dates and within the meaning of General Statutes § 42a-9-204 (1) either a "security interest" had been created or the defendant corporation had acquired any "rights" in the property which defendant debtor bought from Hewitt, rights which defendant attempted as of that time to give to First Hartford.[1] The proper place for filing in order to perfect a security interest in goods which at the time the security interest attaches "are or are to become fixtures" is in the office where a mortgage on the real estate concerned would be filed or recorded; and in all other cases, in the office of the secretary of state. § 42a-9-401 (1). Thus, the recording or filing with respect to fixtures would be in the town clerk's office of the town where the affected real estate was located, and as to personal property, the filing would be in the office of the secretary of state.

Under § 42a-9-204 (1), a debtor must have "rights in the collateral" before a security interest may be created. The code does not clearly establish the

---

[1] "Sec. 42a-9-204. WHEN SECURITY INTEREST ATTACHES; AFTER-ACQUIRED PROPERTY; FUTURE ADVANCES. (1) A security interest cannot attach until there is agreement . . . that it attach and value is given and the debtor has rights in the collateral . . . ."

meaning of this phrase, as for instance whether such rights arise when the debtor enters into a contract to buy goods, or only when he has an interest in the goods when identified with a contract under the Uniform Commercial Code, article 2, "Sales" (§§ 42a-2-101—42a-2-725).

In the instant case, while it is shown that the personal property bought August 30, 1962, from Hewitt, called here the Hewitt goods for convenience, was in the possession of the defendant debtor by July 26, 1962, and at least before August 19, 1962, and that the conditional sale contract between defendant and Hewitt was executed August 30, 1962, there is no showing as to the circumstances or arrangement whereby the defendant had this possession. No legal authority has come, or been brought, to the notice of this court that such mere possession may constitute such "rights in the collateral." An inference that defendant was an unconditional owner of the Hewitt goods on August 15, 1962, would be speculation. Also, there is no evidence showing a sale to defendant corporation in July, 1962, of the Hewitt goods by Hewitt, or that the possession by defendant of them before August 30, 1962, was in conjunction with said conditional sale contract. It is clear that as of the date, August 15, 1962, when First Hartford filed its financing statements, the conditions of § 42a-9-204 (1) had not been met by Hewitt so as to create a security interest in its favor, and so constitute the Hewitt goods "collateral" (§ 42a-9-105 [1] [c]) in which the defendant debtor could have any "rights."[2]

The claim of First Hartford that the Hewitt goods came under the coverage of its financing statement as

[2] "Sec. 42a-9-105. DEFINITIONS AND INDEX OF DEFINITIONS. (1) . . . (c) "collateral" means the property subject to a security interest, and includes accounts, contract rights and chattel paper which have been sold; . . . ."

of August 15, 1962, by virtue of §§ 42a-9-312 (5) (a) and (b) is not sustained. Those provisions deal with the "priorities among conflicting security interests in the same collateral." As of August 15 or 16, 1962, there was not yet any security interest existing respecting Hewitt, and the Hewitt goods had not yet become "collateral." Since there was no security interest favoring Hewitt in the Hewitt goods until August 30, 1962, when the conditional sale contract was executed between the defendant debtor and Hewitt, it follows that as of August 15 or 16, 1962, there was no security interest in the Hewitt goods to conflict with any other respecting them. Under such circumstances, § 42a-9-312 (5) (a) and (b), urged by First Hartford, would have no occasion to apply. To adopt the construction of this section urged by First Hartford could result in goods, such as equipment, becoming subject to the security interest of First Hartford although the debtor's possession were only that of a mere bailee, apart from any purchase or contract to buy. This is not determinative of the question of the priority of First Hartford in the Hewitt goods, however.

The financing statements filed by First Hartford on August 15, 1962, with both the secretary of state and the town clerk of Old Saybrook each had an after-acquired property clause in it expressly including in the description of the property covered "all after acquired property of like kind" to the type described and specifically mentioned therein. The description expressly includes certain specific items of the Hewitt goods, and where otherwise, the description of the types of property covered is sufficiently broad to cover any other of the Hewitt goods. A similar clause is also contained in the security agreement between First Hartford and defendant corporation. For the purposes of article 9 of the Uniform Commercial Code, any description of per-

sonal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. § 42a-9-110.

The question arises as to the effect of this after-acquired property clause, in relation to the conditional sale contract of Hewitt and the defendant corporation, in respect of the Hewitt goods as of August 30, 1962. Under § 42a-9-204 (3), after-acquired property of the kind described in the conditional sale contract of Hewitt can become subject to the security agreement of First Hartford. See Conn. Gen. Stat. Ann. § 42a-9-204 (3), comment 2. A conditional sale contract comes within the scope and policy of article 9 of the Uniform Commercial Code as to secured transactions. § 42a-9-102 (1), (2). The retention or reservation of title by a seller of goods notwithstanding delivery to the buyer is limited in effect to a reservation of a "security interest." § 42a-1-201 (37). Also, the delivery of the Hewitt goods under the conditional sale contract with retention of title in Hewitt does not, in and of itself, affect the rights of First Hartford. § 42a-9-202.

The conditional sale contract of August 30, 1962, between defendant corporation and Hewitt created a security interest in favor of Hewitt which attached to the property thereby sold. § 42a-9-204 (1). To perfect this security interest, a financing statement was required to be filed (§ 42a-9-302 [1]), which, as to goods which at the time the security attached were or were to become fixtures, would be filed in the office where a mortgage on the real estate would be filed, and in all other cases would be filed in the office of the secretary of state. § 42a-9-401 (1).

Hewitt failed to file in the office of the secretary of state; its financing statement was filed only in the office of the town clerk. It described the property covered as the "Complete restaurant and delicates-

sen including kitchen and display equipment." To the extent that this purports to include that portion of the personal property of the defendant debtor not including the Hewitt goods, it is plain that, Hewitt not having filed at all with the secretary of state and First Hartford having done so August 15, 1962, and perfected its security interest on August 16, 1962, First Hartford has priority over General Electric as to this portion of the personal property of the debtor within the coverage of the security agreement of First Hartford. §§ 42a-9-301 (1) (a), 42a-9-312 (5) (a). Included in this priority of First Hartford are such non-Hewitt goods as might be fixtures as of August 16, 1962, as to which First Hartford filed with the town clerk on August 16, 1962, and Hewitt and General Electric not until August 30, 1962, assuming, without deciding, that Hewitt had a security interest in such non-Hewitt goods.

A more fundamental reason for the priority of First Hartford in this non-Hewitt goods portion of the defendant corporation's collateral subject to First Hartford's security agreement, whether fixtures or otherwise, is that neither Hewitt nor General Electric has been shown to have a security interest in that portion of the defendant's property. While the financing statement of Hewitt attempts to be all embracing, there is no security agreement of Hewitt and defendant creating a security interest in that non-Hewitt portion of defendant's property. Without a security agreement (§§ 42a-1-201 [3], 42a-9-105 [1] [h]), a security interest cannot attach. § 42-9-204 (1). Any conflicting security interest would thus relate to such portion of the defendant corporation's property as involved the goods sold by Hewitt to defendant.

The priorities as to the Hewitt goods remain to be considered. In this regard it is convenient to

consider it in two aspects, viz., one in regard to such goods as were not fixtures at the time the security interest attached, and the other in regard to such goods as might be fixtures at that time. In respect of the goods as were not fixtures at the time, there is a priority in favor of First Hartford because of its prior filing with the secretary of state under the circumstances in evidence, and the failure to do so by Hewitt, as previously explained regarding the non-Hewitt goods.

The question of the priority of such of the Hewitt goods as at the time the security interest of Hewitt may have attached were fixtures is next considered. Parenthetically, it is noted that when the court acquiesced in hearing this matter on the last day of the session, after usual adjournment hours, upon the reported stipulation of certain facts as of record appear, the court had the impression that General Electric had abandoned its earlier proposal to offer evidence as to claimed fixtures. The subsequent correspondence of its counsel, in essence deploring the lack of opportunity to offer such evidence, has been not without surprise, because, as the court had made clear, although the presentation of such evidence would have required a postponement of the matter, on account of the crowded short calendar docket on the last day of the spring session, General Electric would not have been deprived of an opportunity duly to present the same at a future session of the court. It is noted also that in neither of the two briefs submitted to the court has General Electric discussed its claims as to fixtures. Nevertheless, to avoid any injustice and further delay, the court is assuming to consider this aspect of the matter.

The question when and whether personal property becomes fixtures is determined by the law of the state other than the Uniform Commercial Code.

§ 42a-9-313 (1). The conditional sale contract of Hewitt, assignor of General Electric, provided in part as follows: "The equipment shall remain personal property regardless of any affixation to the realty and title thereto shall not pass to buyer until the . . . balance has been fully paid in cash." The parties to the contract were competent to make such an agreement, which was binding as between them, even though any such equipment were to be permanently affixed to the realty. *Hartlin* v. *Cody*, 144 Conn. 499, 506. From the fact that the balance was never fully paid, it follows that as of the time the security interest of Hewitt was created and attached to the Hewitt goods as of August 30, 1962, any of such goods as might be affixed to the realty were still personal property. In this respect, the rights of General Electric, as assignee of Hewitt, are no greater than those of Hewitt. On August 30, 1962, the "rights in the collateral" which defendant debtor had (§ 42a-9-204 [1]) with respect to any such fixtures were as personal property. When on that date, therefore, the rights of the defendant in the Hewitt collateral and said collateral came under the coverage of the after-acquired property clause of the First Hartford security agreement, the Hewitt goods were still personal property. On this basis, the failure of Hewitt and General Electric to file with the secretary of state makes their security interest subordinate to that of First Hartford, whose prior filing gives First Hartford priority over that of General Electric. §§ 42a-9-301 (1) (a), 42a-9-312 (5) (a). Moreover, there is nothing to indicate that General Electric has any interest in the pertinent real estate which would subordinate the First Hartford security interest to the benefit of General Electric. Cf. § 42a-9-313.

In *National Cash Register Co.* v. *Firestone & Co.*, 191 N.E.2d 471 (Mass. 1963), considered a case of

first impression, the security interest of the defendant lender had priority over that of the plaintiff, which thereafter delivered a cash register to the debtor under a conditional sale agreement and did not perfect its interest before or within ten days of delivery, where the security agreement of defendant covered all contents of the debtor's business and the cash register came within the coverage of an after-acquired property clause.

In accordance with the foregoing, it is hereby found and adjudged that the secured claim of The First Hartford Fund, Inc., in its full amount has priority over the secured claim of General Electric Credit Corporation and is entitled to payment in priority to said General Electric Credit Corporation.

The court makes no order of payment of the claim of The First Hartford Fund, Inc., at this time and leaves any such action to the future consideration of this court, pending the filing of such reports, accountings and motions as may be required for a determination and approval by the court of administration expenses, fees and any other deductions which may be required in the matter.