**PEERLESS EQUIPMENT COMPANY,**
**Appellant,**

v.

**AZLE STATE BANK, Appellee.**

**No. 17900.**

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 17, 1977.

Barbara L. Welz, Dallas, Jordan, Rubin & Pace and Howard C. Rubin, Dallas, for appellant.

Simon & Simon and W. Weir Wilson and Troy O. Welch, Fort Worth, for appellee.

OPINION

HUGHES, Justice.

Azle State Bank sued Peerless Equipment Corporation for the value of a trencher and trailer pledged as collateral for a loan from Bank to Robert Fuentes who had either bought or agreed to buy the property

from Peerless. Bank claimed Peerless converted the property by reclaiming it and selling it to someone else. Peerless claimed there was no sale under Uniform Commercial Code to Fuentes; that no title passed; and no liability to Bank. Trial to the court without a jury resulted in a judgment for Bank. Peerless appealed.

We affirm.

Fuentes (d/b/a B–J Mobile Home Service Company) agreed to buy a used trencher and trailer from Peerless for $3,667.50. Peerless agreed to sell for that amount. The same day, September 5, 1973, Peerless delivered the trailer and trencher to Fuentes giving him also what Peerless called a "delivery slip." After a demonstration, Fuentes accepted the machinery at the price set and told Peerless he would go to his bank and mail it a check.

After delivery of the machinery to Fuentes, he was billed for the purchase price and Peerless put him on the books as its debtor. Peerless did not have Fuentes execute any document. Fuentes executed a promissory note to bank in the amount of $3,541.44, as well as "a security agreement and a financing statement" which granted a security interest in the machinery. The "financing statements" were filed in Tarrant County, Texas, and with the Secretary of State.

The machinery and an invoice therefor were brought to Bank and exhibited to the loan officer. Loan officer was told by Fuentes the machinery could be used as collateral for the loan, although the invoice was not marked "paid." Loan officer checked Fuentes' credit with Retail Merchants Association and Fuentes had an account with Bank. Bank's loan committee approved the loan. Fuentes did not pay Peerless for the machinery and on October 17, 1973, Peerless took it back with Fuentes' consent, but without the consent or knowledge of Bank.

Fuentes defaulted in paying the note, resulting in Bank's obtaining a judgment against him for $3,452.42. No payments have been made on the judgment. Bank demanded that Peerless give it possession of the machinery or the value thereof. Demand refused: Suit resulted.

"Findings of facts and conclusions of law" were prepared by the trial court, which we will not detail except as to those specifically claimed as error.

■ Peerless assigned as error the trial court's finding, as a matter of law, that its interest as an unpaid cash seller was subordinate to that of Bank. Peerless relied on Tex.Bus. & Comm.Code Ann. § 2.507(b) (1968) and *In re Samuels & Co., Inc., et al. v. Mahon, et al.*, 510 F.2d 139 (5th Cir. 1975), rev'd, 526 F.2d 1238 (5th Cir. 1976), as asserting the theory that Fuentes had no title to the property to support Bank's mortgage. In response, Bank cites the revised opinion written by Judge Godbold in *Samuels, supra*, after the U. S. Supreme Court reversed the case and remanded it to the Fifth Circuit. Judge Godbold specifically noted that the cash seller's right to reclaim is drawn from Tex.Bus. & Comm. Code Ann. § 2.507(b) (1968) and such seller's remedy is one of seller against buyer. "It does not concern rights of seller against third parties." *Id.* at 1244. Further, it was held that the U.C.C. (§ 2–4.01(a) and § 1–201) specifically limits seller's reserving title when he has voluntarily surrendered possession to the buyer; that retention or reservation of title in goods delivered to buyer is limited, in effect, to a reservation of a security interest.

We have found the cases cited by Peerless were handed down before the adoption of the Uniform Commercial Code or did not fit the fact situation here involved. No case has been cited in which the rights of an unpaid cash seller and later perfected security interest holder were involved under the Uniform Commercial Code.

*Cain v. Country Club Delicatessen of Saybrook, Inc.*, 25 Conn.Sup. 327, 203 A.2d 441 (Middlesex Co. 1964), which was cited by both parties, discussed conditional sales contracts as under scope of U.C.C. Article Nine in several transactions. *Cain, supra*, held that reservation of title by a seller in goods delivered to a buyer is limited to being a

retention of a security interest. Further, a financing statement had to be filed to perfect such security interest, Peerless filed no financial statement.

We also note that Tex.Bus. & Comm.Code Ann. § 2.403 provides that one with a voidable title can transfer good title to a good faith purchaser for value *"even though . . . (3) it was agreed that the transaction was to be a 'cash sale' . . .."* (Emphasis ours.) No bad faith allegations nor proof of such were made as to Bank in this case. We overrule point of error no. one.

By point of error no. two Peerless urges that trial court erred in finding, as a matter of law, that Bank used reasonable care and diligence in making the loan to Fuentes. *In re Samuels & Co., Inc., et al. v. Mahon, et al., supra,* holds that the code definition of Article Two of a good faith purchaser does not expressly or impliedly require lack of knowledge of third party claims, and that the code departs from the common law in this regard.

■ No knowledge by Bank of the Peerless claim is reflected in the record and, under the facts in the record, we hold that trial court did not err in finding that Bank used reasonable care and diligence in making the loan to Fuentes. Point of error no. two is overruled.

Affirmed.