JOHN R. BROWN, Circuit Judge:
 

 This statutory interpleader brought pursuant to 28 U.S.C. § 1335 was filed by the Small Business Administration (SBA) to determine the proper distribution of proceeds from a foreclosure sale. The fund represents the remaining assets of Texas Electronics Mart, Inc. (TEMI). In distributing the fund, the District Court determined that Westside Bank of San Antonio (West-side) held the only priority claim. The Court thus denied the priority status asserted by O’Sullivan Industries, Inc. (O’Sullivan) based on its right to reclaim the proceeds from the sale of goods it delivered to TEMI, just prior to the foreclosure. O’Sullivan duly perfected this appeal. We hold that a seller of goods (here, O’Sullivan) retains a priority status to the extent of traceable proceeds from the sale of those goods where he has complied with all the requirements of Texas Business and Commerce Code Annotated § 2.702 (Vernon 1968) (the Texas UCC), and diligently pursued the right of reclamation created under that section. We therefore affirm in part, reverse in part, and remand for a determination of whether O’Sullivan diligently pursued its right to reclamation.
 

 Factual Background
 

 In April of 1976 TEMI executed a promissory note and security agreement in favor of Westside for the sum of $99,500. The note was guaranteed by the SBA. TEMI granted Westside a security interest in “all machinery, and equipment, fixtures, inventory and accounts receivable now owned, to be purchased with loan proceeds and hereafter acquired.” The agreement included a future advance clause, a clause securing any legal fees incurred in enforcing the agreement, and a clause securing the interest due. Westside duly perfected its security interest.
 
 [1]
 

 In September of 1979, TEMI executed a second promissory note to Westside for the sum of $16,000. The note was collateral-ized with the 1976 security agreement through the future advance clause.
 
 [2]
 
 At
 
 *1260
 
 the time of trial, Westside .asserted an outstanding claim on this note in the amount of $12,471.52.
 

 Pursuant to the SBA guarantee, West-side assigned its rights under the first note to the SBA sometime in December, 1979.
 
 [3]
 
 The SBA declared the note delinquent and accelerated its maturity on December 14, 1979. In accordance with the security agreement, the SBA conducted a foreclosure sale of all TEMI’s assets on January 21, 1980. After deducting the loan balance and expenses of the sale, the SBA deposited the remaining proceeds ($50,750.95) with the District Court for proper distribution among TEMI’s creditors.
 

 The District Court awarded Westside the sum of $17,666.60, representing its claim on the second note plus interest and attorney’s fees. The Court, however, denied the priority right of reclamation asserted by O’Sullivan under Texas UCC § 2.702. The Court reasoned that any right of reclamation would be cut short by a prior secured lender’s foreclosure. Because in this case the SBA had foreclosed, the Court found that O’Sullivan had no right to the proceeds from the sale of the goods. In disposing of the case on this basis, the District Court deemed it unnecessary to reach the issue whether O’Sullivan had complied with the statutory requirements for reclamation under § 2.702. The Court therefore distributed the remaining funds pro rata among O’Sullivan and TEMI’s other general unsecured creditors.
 

 The Reclamation Right
 

 The right of reclamation is specifically created in favor of a credit seller by Texas UCC § 2.702.
 
 [4]
 
 This right exists only in “specific and limited circumstances; it can be asserted only if an exacting procedure is followed; and the right can never be asserted to defeat the interest of certain third parties who have dealt with the defaulting buyer.”
 
 Matter of Samuels & Co., Inc.,
 
 526 F.2d 1238 (5th Cir.1976) (en banc),
 
 cert. denied,
 
 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).
 

 In order for the right to arise, certain conditions must be met. First, the buyer must have received the goods on credit. There is no dispute that TEMI received the goods shipped by O’Sullivan on credit. Second, the buyer must receive the goods while insolvent. The District Court made no finding as to when TEMI became insolvent, but it did find that O’Sullivan did
 
 *1261
 
 not know of TEMI’s insolvency when it shipped the goods. Finally, the seller must learn of the buyer’s insolvency and make demand for return of the goods within ten days from the date of delivery. The District Court found that O’Sullivan shipped furniture accessories valued at $36,756.94 on November 19 and 21, 1979, and that the shipments were received by TEMI on November 21 and 23, respectively. The Court determined that O’Sullivan learned of TEMI’s insolvency sometime between November 21 and November 30. It also found that O’Sullivan made written demand for payment of the entire amount of TEMI’s open account ($50,727.07) on November 30.
 
 [5]
 

 In addition to the demand made upon TEMI, O’Sullivan also made written demand upon Westside
 
 [6]
 
 through O’Sullivan’s parent corporation, Conroy, Inc. The letter from Conroy also demanded payment for the full amount of TEMI’s open account. This letter, however, also specified that it was a demand pursuant to § 2.702 of the Texas UCC. The goods were not returned, nor was payment made to O’Sullivan.
 

 O’Sullivan filed suit against TEMI in state court on January 18, 1980 to enforce its right of reclamation. However, on January 21 the SBA foreclosure sale was conducted, and TEMI ceased to exist for all practical purposes as a business entity. This effectively terminated the state court litigation.
 
 [7]
 
 In order to further protect the reclamation right it was asserting, O’Sullivan repurchased 797 of the 1,000 pieces of furniture from the November shipment at the foreclosure sale for a price of $27,500. On appeal, O’Sullivan continues to urge its priority status as to the full sales proceeds of $36,756.94. Alternatively, it urges priority status as to $27,500 — the traceable proceeds from the goods O’Sullivan has sought to reclaim.
 

 In determining that O’Sullivan’s right to reclaim was terminated by the SBA foreclosure and therefore could not attach to proceeds, the District Court relied on
 
 Matter of Samuels, supra.
 
 We believe the Court’s reliance was misplaced.
 

 Distinguishing Samuels
 

 In
 
 Samuels,
 
 a divided
 
 en banc
 
 Court adopted Judge Godbold’s dissent from the panel opinion, which held that an unpaid
 
 cash
 
 seller’s right of reclamation is subordinate to a preexisting perfected security interest in the buyer’s after acquired property.
 
 Id.
 
 at 1245. In so holding, the Court emphasized several important factors which are not present in the case before us. At the outset, the Court recognized that the reclaiming seller was a
 
 cash
 
 seller.
 
 [8]
 

 Id.
 
 at 1244. Furthermore, he had not made a demand under § 2.702 until a full year after the delivery. The Court refused to find that his reclamation right had been timely exercised.
 
 Id.
 
 at 1245. Disturbed by the fact that in recognizing the cash seller’s right to reclaim courts had extended the § 2.702 remedy, the Court refused
 
 *1262
 
 to further extend the time within which the right could be exercised.
 
 [9]
 

 While the
 
 Samuels
 
 opinion expressed doubt as to whether a reclamation right would extend to proceeds,
 
 [10]
 
 the issue was not outcome-determinative. Rather, the Court assumed for the purpose of analysis that the reclamation right could attach to proceeds, and disposed of the case on other grounds.
 
 Samuels
 
 involved a priority contest between an unpaid cash seller and a prior secured lender with a perfected Article Nine security interest. Significantly, in the present case the only prior secured lenders (the SB A and Westside) have been fully satisfied. Thus,
 
 Samuels
 
 dealt with the right to reclamation in an entirely different priority context than the one before us today. Furthermore, in reaching its conclusion the
 
 Samuels
 
 Court relied upon the seller’s failure to make a timely demand. Even if he had made such a demand, reasoned the Court, he would have taken subject to the prior lender’s perfected Article Nine security interest because the holder of such an interest qualifies under the Texas UCC as a good faith purchaser for value.
 
 [11]
 
 Section 2.702 expressly mandates that a seller’s reclamation right is “subject to” the rights of an Article Nine good faith purchaser for value.
 

 Moreover, the meticulous analysis provided by
 
 Samuels
 
 regarding the interplay between Articles Two and Nine of the UCC is fully consistent with a finding in favor of O’Sullivan in the instant case. Turning first to the Texas UCC, § 2.401(a), the
 
 Samuels
 
 Court determined that the seller’s interest was in the nature of a security interest.
 
 Samuels, supra,
 
 526 F.2d at 1246. The Court went on to recognize that the UCC makes security interests that arise by operation of law under Article Two (such as the right of reclamation) subject to Article Nine.
 
 Samuels, supra,
 
 526 F.2d at 1247. The Court found this crucial to the final outcome.
 
 [12]
 
 It is not inconsistent with this reasoning for us to hold now that the express language of § 9.504, which makes the power of foreclosure “subject to Article Two,” creates a duty in the foreclosing creditor to recognize and protect any Article Two interest of which the creditor is aware. Rather, such a holding reemphasizes the internal consistency of the UCC.
 

 Finally, we find the fact that
 
 Samuels
 
 was a bankruptcy proceeding to be an important distinction.
 
 [13]
 
 This is crucial because the
 
 Samuels
 
 Court treated the reclamation right there as an unperfected security interest. Under bankruptcy law, an unperfected security interest is cut short .by the trustee’s status as a hypothetical
 
 *1263
 
 lien creditor against all assets in the debt- or’s estate from the date the petition is filed. In the instant case, bankruptcy was not pending; therefore, there is no hypothetical lien creditor to cut short O’Sullivan’s interest, and none of TEMI’s general creditors have attained that status.
 

 The Right to Proceeds
 

 The issue whether a right of reclamation extends to proceeds has not been squarely addressed in Texas. For the reasons set out below, we hold that a seller’s right of reclamation under § 2.702, if properly exercised, extends to traceable proceeds from the sale of goods where all prior interests in those goods have been fully satisfied. To hold otherwise would in many instances render the statutory remedy a nullity. In most instances, a buyer such as TEMI has granted a security interest in his after acquired property to at least one of his financing creditors. The seller is already second in priority to that lender. Furthermore, the right to reclaim goods does not arise unless the buyer is insolvent, a condition that makes foreclosure by the prior lender more than likely. Often there will be very little, if any, money left after the priority debts are paid. To hold that such a foreclosure terminates a reclaiming seller’s rights to any remaining proceeds would in most cases emasculate the reclamation remedy. We recognize that Article Nine provides a means by which a seller can defeat prior liens,
 
 [14]
 
 however, we are not faced with such a situation here. In enacting § 2.702 we believe that the Texas Legislature intended to provide an entirely separate remedy, outside the complexities of Article Nine. It is a remedy which enables a seller to maintain a priority status against the buyer’s
 
 unsecured
 
 creditors in a situation such as this. We find support for this position in many contexts.
 

 Priority under the UCC
 

 Turning first to the language of the statute, the seller’s right is made subject to the rights of “a buyer in the ordinary course or other good faith purchaser or lien creditor under this chapter (Section 2.403).” Texas UCC § 2.702(c). Comment 3 to that section lists precisely those interests to which the seller’s rights are made subject. Conspicuously missing are the buyer’s general unsecured creditors. Quite the contrary, the comment expressly states that “this section constitutes preferential treatment as against the buyer’s other creditors.”
 

 The Ninth Circuit has held that the Texas right of reclamation survives bankruptcy; thus the right of the trustee as a hypothetical lien creditor cannot supercede the right of the seller to reclaim despite the words of the statute.
 
 Matter of Daylin,
 
 596 F.2d 853, 855-56 (9th Cir.1979). Citing
 
 In re Telemart Enterprises, Inc.,
 
 524 F.2d 761 (9th Cir.1975), as authority, the
 
 Daylin
 
 Court further held that:
 

 Section 2.702 authorizes the exact equivalent of the common law remedy of rescission, and therefore sales described by that section result in a transfer of only voidable title. Consequently, the seller’s right can only be cut off by a good faith purchaser for value.
 

 Daylin, supra,
 
 596 F.2d at 856 (citation omitted).
 

 The District Court reasoned that O’Sullivan’s right of reclamation was completely terminated when the SBA, as a prior lien-holder, foreclosed. However, under the UCC system, the prior lienholder has several duties upon foreclosure of its lien that are designed to protect both the interests of the buyer and those of the buyer’s other creditors. Texas UCC § 9.501
 
 et seq.
 
 The SBA was charged with these duties when it became subrogated to Westside’s position. Texas UCC § 9.504(e).
 

 For example, a secured party’s right to dispose of collateral is “subject to the chapter on sales (Chapter 2),” therefore, a seller’s reclamation right, which is created under Chapter Two, is implicitly recognized as
 
 *1264
 
 a limitation on the seller’s ability to dispose of a debtor’s assets. Texas UCC § 9.504(a). Furthermore, § 9.504(a) provides that after the lienholder satisfies its own claim, the proceeds of the sale must be applied to the satisfaction of any junior security interests if written demand is received. The record here clearly reveals that O’Sullivan made written demand on Westside, advising Westside of its § 2.702 claim prior to the foreclosure on TEMI’s assets.
 

 After junior interests are satisfied, the secured party must account to the debtor. “[Wjhere the secured party knows the collateral is owned by a person who is not the debtor, the owner of the collateral and not the debtor is entitled to any surplus.” Texas UCC § 9.504(b), Comment 2.
 

 If the nature of a seller’s right of reclamation in Texas is that of an unperfected security interest,
 
 see Matter of Samuels, supra,
 
 526 F.2d at 1244-46, then it seems clear that O’Sullivan was entitled to second priority status with regard to the proceeds after making demand.
 
 See also Peerless Equipment Co. v. Azle State Bank,
 
 559 S.W.2d 114, 115-16 (Tex.Civ.App.1977).
 
 [15]
 

 However, if O’Sullivan’s interest is classified as the “equivalent” of a right to rescind, thereby enabling it to void the buyer’s title,
 
 Daylin, supra,
 
 596 F.2d at 856,
 
 [16]
 
 then Westside was on notice that the goods in fact were owned by someone other than the debtor, and should have accounted to O’Sullivan for the proceeds. Finally, both the SBA and Westside implicitly recognized that O’Sullivan had retained an interest in the goods by giving O’Sullivan notice of the time and place of the foreclosure sale.
 
 [17]
 

 Bankruptcy Reform Act of 1978
 

 While no bankruptcy petition was filed in the instant case, the treatment of a seller’s right of reclamation under the new bankruptcy code provides a useful analogy.
 
 [18]
 
 It is generally recognized that the UCC and the bankruptcy code were intended to provide a comprehensive and interrelated scheme for recognizing different property rights. Hence, the priority scheme of the UCC is incorporated into the bankruptcy code. The new code contains an express provision for dealing with the state UCC created right of reclamation in 11 U.S.C. § 546(c). The legislative history of that section makes clear that “the purpose of the provision is to recognize, in part, the validity of. § 2-702 of the Uniform Commercial Code, which has generated much litigation, confusion, and divergent decisions in different circuits.” House Judiciary Report No. 95-595 to accompany House Report 8200, 95th Cong., 1st Sess. (1977) p. 371-72, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6328.
 

 While § 546(c) does not reverse the holding of
 
 Samuels,
 
 it does provide that the trustee’s status as a hypothetical lien credi
 
 *1265
 
 tor is
 
 subordinate
 
 to the seller’s right of reclamation. Furthermore, if the Court utilizes its power to deny the seller's right of reclamation, it must adequately protect the seller’s interest by granting the seller’s claim priority as an administrative expense or securing the claim’with a lien. 11 U.S.C. § 546(c)(2). Thus, the
 
 post-Samuels,
 
 new bankruptcy code deals with a seller’s right of reclamation as equivalent to a perfected security interest under Article Nine.
 
 [19]
 

 See
 
 11 U.S.C. § 363. Finally, the House Report indicates that Congress intended to extend the right of reclamation to proceeds:
 

 The right is subject however, to the power of the court to deny reclamation and protect the seller by granting him
 
 a priority as an administrative expense for his claim arising out of the sale of the goods.
 

 House Report,
 
 supra,
 
 at 372, U.S.Code Cong.
 
 &
 
 Admin.News 1978, p. 6328. (emphasis added). Hence, we see that § 546(c) was intended to allow the reclaiming seller a priority claim
 
 [20]
 
 against the
 
 proceeds from
 
 the sale of the goods when the Court chooses not to return the goods themselves. Clearly this constitutes “preferential treatment against the buyer’s general unsecured creditors.”
 
 See
 
 Texas UCC § 2.702 comment 3.
 

 Conclusion
 

 On the basis of all the foregoing, we hold that where a seller of goods has diligently asserted its right of reclamation and otherwise met the requirements of § 2.702, and where all prior lienholders have been fully satisfied, that seller’s claim will be afforded priority status as against the buyer’s general unsecured creditors. Furthermore, we hold that such a seller’s priority will extend to proceeds that are traceable to the goods. We therefore reverse the District Court’s holding as to this last point. We remand, however, for a factual finding as to whether O’Sullivan diligently exercised its right of reclamation. That finding is essential to a determination of this case.
 
 [21]
 
 However, the District Court was clearly correct in granting Westside first priority to the interpleaded fund.
 

 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 

 [1]
 

 . Westside perfected its interest by filing the necessary documents with the Secretary of State and the County Clerk for Bexar County, Texas, on April 30 and May 6, 1976 respectively. There is no dispute that this security interest had first priority against all of TEMI’s other creditors, including O’Sullivan.
 

 [2]
 

 . The future advance clause allowed Westside to make the second loan to TEMI without obtaining a second security agreement. Furthermore,
 
 *1260
 
 by collateralizing the second loan with the same security agreement, Westside perfected both security interests as of the date of the filing. Westside, therefore, gained priority against any creditors who perfected security interests during the interim between the first and second loans, even though the second loan had not yet been funded. Texas UCC § 9.204(c).
 

 [3]
 

 . When a debtor defaults on a loan that the SBA has guaranteed, the lender may avoid the time, expense, and potential liability of foreclosure by assigning its rights under the loan to the SBA. The SBA then pays the lender the full amount of the loan and becomes subrogated to the rights of the lender, including any security interest or priority status the lender had attained. The UCC recognizes the utility of this practice and provides for it in § 9.504(e). Thus, when West-side assigned its rights under the first note to the SBA, both the SBA and Westside had a perfected security interest in TEMI's assets pursuant to the security agreement executed in April of 1976.
 

 [4]
 

 . Tex.Bus. & Com.Code Ann. § 2.702 (Vernon 1968) provides:
 

 (a) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this chapter (Section 2.705).
 

 (b) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer’s fraudulent or innocent misrepresentation of solvency or of intent to pay.
 

 (c) The seller’s right to reclaim under Subsection (b) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this' chapter (Section 2.403). Successful reclamation of goods excludes all other remedies with respect to them.
 

 [5]
 

 . This demand was made by telegram and subsequent confirmation notice, however, the record reveals substantial uncertainty as to whether either was received by TEMI. The District Court found that by November 30, TEMI’s doors were already closed. The record indicates that Westside was responsible for the final closing of TEMI, and that by November 30 Westside was in substantial control of the premises.
 

 [6]
 

 . The record implies that O’Sullivan was unable to locate TEMI's principal officers. The issue presented is whether by November 30 Westside had assumed control of TEMI so as to become its fiduciary representative. If so, then written demand on Westside would be equivalent to written demand on TEMI. We find however, that there are insufficient facts in the record to determine this issue. Therefore, we remand for the limited purpose of resolving whether O’Sullivan’s demands on Westside were tantamount to proper demand upon TEMI.
 
 See
 
 note 21,
 
 infra. See also U.S. v. Terrey,
 
 554 F.2d 685 (5th Cir.1977) (where a creditor decides to liquidate collateral, he must act as the debtor’s fiduciary in disposing of assets);
 
 Tackett v. Mid-Continent Refrigerator Co.,
 
 579 S.W.2d 545 (Tex.Civ.App.1979) (secured party who repossesses property has duty to make commercially reasonable disposition on account for proceeds).
 

 [7]
 

 . The state court litigation is relevant only insofar as it illustrates O'Sullivan’s diligence in seeking reclamation.
 

 [8]
 

 . In
 
 Samuels,
 
 the seller had received a check which was subsequently dishonored.
 

 [9]
 

 . Unwilling to extend the time for demand beyond the maximum set forth in the statute, the Court stated, "My reluctance is all the greater where the right at issue is not granted by the Code but is rather the product of judicial interpretation of a Comment which, whatever grant of power it may suggest, expressly limits that right to a ten-day life.”
 
 Samuels, supra,
 
 526 F.2d at 1245.
 

 [10]
 

 . Judge Godbold’s opinion expiessed the view that “where a right or interest in proceeds is recognized by the Code, it is recognized expressly.”
 
 Samuels, supra,
 
 526 F.2d at 1245. Judge Godbold’s opinion was also based on his continued reluctance to broaden the scope of § 2.507 (the section used by the Court to extend the § 2.702 reclamation right to cash sellers). The brevity of this section of Judge Godbold’s opinion and the Court’s failure otherwise to resolve the issue would seem to indicate that this language was not intended to be determinative under the facts of
 
 Samuels.
 
 Rather, this language appears to recognize an additional obstacle the seller would have had to overcome in order to prevail.
 

 [11]
 

 . "The Code definition of ‘purchaser’ is broad, and includes not only one taking by sale but also covers persons taking by gift or by voluntary mortgage, pledge or lien. § 1.201(32), (33). It is therefore broad enough to include an Article Nine secured party.”
 
 Samuels, supra,
 
 526 F.2d at 1242.
 

 [12]
 

 . Section 2.401(a) provides: "... any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest_” The panel majority in
 
 Samuels
 
 had determined that § 2.401(a) applied only to credit sales.
 
 Samuels, supra,
 
 526 F.2d at 1246. Judge Godbold’s opinion took the position that it applied to both cash and credit sales.
 

 [13]
 

 .
 
 Samuels
 
 was decided under the Bankruptcy Act of 1938, formerly 11 U.S.C. § 101
 
 et seq.
 

 [14]
 

 .
 
 See Samuels, supra,
 
 discussion of purchase money security interests under Article Nine, at 1247-48.
 

 [15]
 

 .
 
 But see Ranchers and Farmers Livestock Auction Co. v. First State Bank,
 
 531 S.W.2d 167 (Tex.Civ.App.1975) (seller’s right of reclamation is not a security interest within the purview of a statute governing secured transactions).
 

 [16]
 

 .
 
 See also Lazidis v. Goidl,
 
 564 S.W.2d 453 (Tex.Civ.App.1978).
 

 [17]
 

 . Texas UCC § 9.504(c) provides that a foreclosing creditor who has been notified in writing of a subordinate interest in the property to be sold must give reasonable notice of the time and place of the foreclosure sale to the holder of that interest. If he fails to do so, he may be liable under § 9.507.
 

 [18]
 

 . Although we cite portions of the 1978 Bankruptcy Act only for purposes of analogy, we recognize that the constitutionality of at least a portion of that Act was called into question by
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We point out, however, that this Circuit, "and every other one that has ruled on the issue, has refused to accord
 
 Marathon
 
 ... [a] broad sweep....”
 
 In Re Davis,
 
 730 F.2d 176, 182 (5th Cir.1984). In
 
 Davis
 
 we followed our own precedent and that of the Sixth Circuit in reading
 
 Marathon
 
 to hold unconstitutional only 28 U.S.C. § 1471(c), which purports to vest direct and nonderivative jurisdiction in the bankruptcy courts.
 
 Davis, supra,
 
 730 F.2d at 182-183,
 
 citing Matter of Braniff Airways,
 
 700 F.2d 214, 215 (5th Cir.),
 
 cert. denied,
 
 — U.S. —, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983) and
 
 White Motor Corp. v. Citibank, N.A.,
 
 704 F.2d 254 (6th Cir.1983). We therefore assume without deciding that the cited portions of the Act are constitutional after
 
 Marathon.
 

 [19]
 

 . Under the bankruptcy structure, most interests in the debtor’s property are cut off — except perfected security interests, judgment liens which have been levied against, and certain nondischargeable debts. By providing that the trustee’s interest is subordinate to the seller’s right of reclamation, the new bankruptcy code has in a sense elevated the right of reclamation to the level of these other interests because it, too, is not cut short by the filing of the bankruptcy petition.
 

 [20]
 

 . By providing that the trustee must grant the seller priority as an administrative expense, he is in effect granting the seller the right to be paid first from whatever assets remain.
 
 See
 
 11 U.S.C. § 507.
 

 [21]
 

 . See Lazadis, supra,
 
 note 16 (mere fact that a party may have a right to rescind under vendor’s lien is not tantamount to election to exercise that right). In order for O’Sullivan to retain a priority under its right of reclamation, it must have diligently exercised that right. The record is unclear whether O’Sullivan could have made demand on TEMI for return of the goods. While the letter to Westside clearly states that it is a demand pursuant to § 2.-702, the telegrams to TEMI made demand for payment only. On remand the District Court should determine whether O’Sullivan could have made such a demand on TEMI. If the answer is no, then the District Court must determine whether Westside stood as a fiduciary of TEMI when O’Sullivan made demand on it,
 
 supra
 
 n. 6, so that demand on Westside constituted demand on TEMI.