In re Richard **WOLFE,** Debtor.

Richard **WOLFE,** Plaintiff,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PARAGOULD, Defendant.

Bankruptcy No. 384–32031 M–11.
Adv. No. 385–3107.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 5, 1986.

Robert L. Hoffman, D. Bradley Kizzia, Strasburger & Price, and E. Paul Kieffer, Philip I. Palmer, Jr., Palmer, Palmer & Coffee, Dallas, Tex. for plaintiff.

Thomas Connop, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., and Pamela Owen, Law, Snakard & Gambill, Ft. Worth, Tex., for defendant.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge.

The case at bar is an adversary proceeding brought by Debtor Richard Wolfe ("Wolfe" or "Plaintiff") against First Federal Savings and Loan Association of Paragould ("First Federal" or "Defendant"). During the hearing on Defendant's jury demand, First Federal stipulated that this was a core proceeding and consented to this Court's jurisdiction, as well as consenting to the holding of a jury trial. The Plaintiff did not consent to this Court conducting a jury trial and argued instead that Bankruptcy Courts could not conduct jury trials on this particular issue. Additionally, Debtor asserted that the jury demand was untimely and should, therefore, be denied on those grounds. This Court entered an Order, subsequent to the hearing on Defendant's jury demand, granting the request, but retained the right to make additional findings of fact and conclusions of law. The following Memorandum Opinion supplements the previous findings and conclusions contained in that Order.

## A.

### Statement of the Case

An involuntary Chapter 7 petition was filed against Richard Wolfe on December 27, 1984, which was subsequently converted by Wolfe to a Chapter 11 proceeding. First Federal, asserting a security interest in Wolfe's property located at 9000 Inwood Road, Dallas, Texas, filed a Motion to lift the stay on January 11, 1985. Allegedly, First Federal took an assignment of a note from a third party without recourse for fair market consideration. Hence, it claims it is an innocent purchaser for the value of the note. Wolfe's response to First Federal's Motion to lift stay alleged that First Federal's lien was void as a matter of law under 11 U.S.C. 544(b).[1]

In February, 1985, Wolfe filed a Complaint to Declare Lien Void asserting that First Federal's lien was void under Article 16(50) of the Texas Constitution. Thereafter, Wolfe moved to consolidate the Motion to Lift Stay with the adversary proceeding, which the Court granted.

First Federal's answer in the adversary proceeding alleged various defenses including waiver, estoppel, and the unclean hands doctrine, in addition to denying Wolfe's allegations. The Defendant asserted a counter-claim that Wolfe's actions in regard to the alleged note violated the Texas Deceptive Trade Practices Act, V.A.T.S., Bus. & C. § 17.41 *et seq.* First Federal further claimed damages from Wolfe's alleged fraudulent conduct. Wolfe filed his re-

sponse and subsequent amended reply to Defendant's counter-claim on July 2, 1985. First Federal filed its Demand for Jury Trial on July 11, 1985, asserting that all issues in dispute sounded in law, thereby requiring a jury trial. Debtor did not dispute that the case at bar would be tried by jury under state law, but countered in his brief that "... [e] very [sic] cause of action in Texas is entitled to a jury and that fact has no bearing on whether a federal court will or will not grant a jury." Plaintiff's Brief at p. 3.

Both parties concede that the disputed issues constitute core proceedings under 28 U.S.C. § 157(b)(2), although they differ as to the specific subsection. The Plaintiff characterizes the instant dispute as a fraudulent conveyance which is covered by § 157(b)(2)(H). Wolfe then argues that, because the action is a fraudulent conveyance, it is an equitable proceeding, citing, *In re Graham,* 747 F.2d 1383, 1387 (11th Cir.1984), in which the Eleventh Circuit discussed the historical treatment of fraudulent conveyances and concluded they were equitable proceedings. Thus, the instant action, according to Wolfe, may be tried by this Court without a jury in compliance with Wolfe's interpretation of the Supreme Court's decision in *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). Because other subsections also potentially apply to the instant action, to wit, § 157(b)(2)(A), (B), (E), (K) and (O), Wolfe's characterization of the action is not controlling.[2]

---

1. 11 U.S.C. 544(b) provides

   The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

   Section 502(e) provides in part

   (e)(1) Notwithstanding subsections (a) and (b) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

   (A) such creditor's claim against the estate is disallowed; ...

2. 28 U.S.C. § 157(b)(2)(A), (B), (E), (K) and (O) provide:

   (2) Core proceedings include, but are not limited to—

   (A) matters concerning the administration of the estate;

   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

   * * * * * *

   (E) orders to turn over property of the estate;

Notwithstanding the parties' largely unanalyzed assumption that the issues in dispute constitute core proceedings, the Court will make that determination on its own pursuant to 28 U.S.C. § 157(b)(3), which provides:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. *A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.* [Emphasis added].

*See also,* Taggert, *The New Bankruptcy Court System,* 59 AM.BANKR.L.J. 234, 243 (1985).

*In re Shell Materials,* 50 B.R. 44, 13 B.C.D. 185 (Bankr.M.D.Fla.1985) presented issues similar to those in the case at bar. The debtor objected to the creditor's lien based on State (Florida) law and further sought treble damages for an alleged illegal tying arrangement under federal law. Judge Paskay concluded in *Shell Materials* that the action seeking a determination of the lien's validity under Florida law constituted a core proceeding. *Id.* at 186. The court also held that the other issues, although considered related proceedings, were sufficiently interwoven within the core issues to compel denying the motion for abstention. Judge Paskay noted that the related proceedings would have otherwise resulted in discretionary abstention by the court.

The Defendant's Deceptive Trade Practices Act ("D.T.P.A.") counter-claim appears sufficiently peripheral to this bankruptcy proceeding to support designation as a related proceeding. The more appropriate disposition of this issue appears to be discretionary abstention under 28 U.S.C. 1334(c)(1). The Court may therefore grant a motion to abstain under § 1334(c)(1) if filed by either party, may abstain on its own, or may consider retaining the action if the parties consent under 28 U.S.C. 157(c)(2).

Whether the remaining issues should be considered core depends on the "nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).[3] Stripped bare, the instant action is more accurately described as a declaratory judgment as to the validity of each party's claim to the title of the property.

If First Federal's lien is deemed valid under State law, any deficiency resulting from foreclosure will increase the total amount of unsecured claims of the debtor's estate. 11 U.S.C. § 506. On the other hand, if the property exceeds the lien value, and hence, is not found to be Wolfe's homestead, the action will increase the assets of the estate to be distributed to creditors. Resolution of this issue also determines the extent of Wolfe's exemption under 11 U.S.C. § 522.

██ Section 157(b)(2)(A), (B), (E), (H), (K), or (O) could theoretically govern the case at bar as to whether this action is a core proceeding. The determination as to whether a creditor's claim is secured, or even valid, has traditionally been a central or "core" bankruptcy question. Resolution of the validity of Wolfe's homestead claims also determines whether the underlying property can be exempted and is therefore a core bankruptcy proceeding. For the foregoing reasons, the issues, as limited

* * * * * *

(K) determinations of the validity, extent, or priority of liens;

* * * * * *

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

3. The Supreme Court's statement in *Ross, supra,* was made within the context of analyzing the right to a jury trial under the Seventh Amendment, but the Court's admonition is equally compelling in the context of determining whether a dispute is considered core.

above, fall within the central purpose of the Bankruptcy Code, and, accordingly, should be deemed core.[4]

### B.

### Timeliness of the Jury Demand

■ Plaintiff has alleged, without substantial discussion, that the Defendant's jury demand is untimely. The objection was denied. The Fifth Circuit, in *Pinemont Bank v. Belk*, 722 F.2d 232 (5th Cir.1984), noted that it had interpreted F.R. C.P. "39(b) to require a court to grant a jury trial ... 'in the absence of strong and compelling reasons to the contrary.' *Cox*, 607 F.2d at 144 (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 409 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)." *Id.* at 236. Absent compelling reasons, not yet shown by Plaintiff, Defendant's jury demand will not be dismissed merely because of its untimeliness.

In *In re Bokum Resources Corp.*, 49 B.R. 854, 13 B.C.D. 11, 20 (Bankr.D.N.M. 1985) ("Bokum"), the court discussed the treatment of untimely jury demands in a bankruptcy context and concluded:

> It is then provided in B.R.P. 9015(b)(1) that a timely demand requires service of the demand in writing not later than 10 days after service of the last pleading directed to such issue, unless the demand is endorsed on a pleading of the party. Subsection (d) of B.R.P. 9015 then provides that the court shall try all issues not demanded for trial by jury. However, it also provides: 'Notwithstanding the failure of a party to demand a jury when such a demand might have been made of right, the court on its own initiative may order a trial by jury of any or all issues.' This seems to allow some latitude and makes it unreasonable to impose strict adherence to B.R.P. 9015(b) unless prejudice will result to the opposing party.

■ The jury demand will not be denied in this particular case on the grounds of timeliness. *But see, In re Basin Refining, Inc.*, 30 B.R. 578 (Bankr.N.D.Tex.1984), in which Judge Ford denied a jury request on the grounds of timeliness because the request was first made within a week of the trial. *Basin Refining, Inc., supra*, at 581. The prejudice to the opposition from the late jury demand apparently constituted a sufficiently compelling reason to deny it on that basis. The instant case does not contain similar facts.

### C.

### Right to Trial by Jury

Although an extensive analysis delineating the historical underpinnings of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") is unnecessary in light of the many recent cases and articles on point,[5] a brief discussion of the historical framework facilitates an understanding of the current jurisdictional scheme.

Under the Bankruptcy Act of 1898, as amended by the Chandler Act of 1938 ("Act"), the Bankruptcy Courts possessed summary jurisdiction over all matters relating to the administration of the case and involving disputes over property within the actual or constructive possession of the court. *See, Katchen v. Landy, supra*, at

---

**4.** 28 U.S.C. 157(c)(1) provides that, in a related proceeding, the Bankruptcy Judge shall submit proposed findings of fact and conclusions of law to the District Court, and any final order or judgment shall be entered by the District Judge, after considering the Bankruptcy Judge's proposed findings and conclusions and reviewing *de novo* those matters to which a party has objected. Thus, a jury trial on a related proceeding would be duplicative and wasteful. Accordingly, were this proceeding considered related, the court would abstain from hearing the case. Other courts concurring include *In re*

*Morse Electric Co.*, 47 B.R. 234 (Bankr.N.D.Ind. 1985); *In re Smith-Douglass*, 43 B.R. 616 (Bankr.E.D.N.C.1984).

**5.** *See, e.g., Taggert, supra;* Countryman, *Scrambling to Define Bankruptcy Jurisdiction: The Chief Justice, The Judicial Conference and the Legislative Process*, 27 HARVARD JOURNAL ON LEGISLATION 1 (1985); *In re Boss-Linco Lines, Inc.*, 55 B.R. 299, 13 B.C.D. 1028 (Bankr.W.D.N. Y.1985).

336, 86 S.Ct. at 476, *citing, Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1939). Plenary jurisdiction included, *inter alia*, property held by a party other than the debtor (termed "bankrupt" under the Act), under a substantial adverse claim to the debtor, and was tried outside the Bankruptcy Court. *See generally*, 2 *Collier on Bankruptcy*, § 23 (14th ed. 1976). Bankruptcy Act § 2(a)(7) provided that failure to timely object to summary jurisdiction, if the action was plenary, constituted consent to the adjudication of the proceeding by the Bankruptcy Court. Excessive litigation arose from these jurisdictional disputes as to whether an action was summary or plenary, and if plenary, whether consent had been given by the creditor. S.Rep. No. 989, 99th Cong. 2d Sess. 17 *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5803. *See also, Note*, 16 Tex.Tech.L.Rev. 535, 538, n. 23. Professor King noted that consent jurisdiction was one of the abusive practices that the Congress hoped to eliminate through passage of the 1978 Bankruptcy Code ("Code"). King, *Jurisdiction and Procedure*, 38 VAND.L.REV. 675, 689, n. 44. Congress, accordingly, abolished summary-plenary jurisdiction when it enacted the Code. *See, In re First Fin. Group of Texas*, 11 B.R. 67 (Bankr.S.D. Tex.1981); *In re Fleming*, 8 B.R. 746 (N.D. Ga.1980). *Katchen, supra*, is the most often cited case discussing summary-plenary jurisdiction and merits discussion.

The Supreme Court in *Katchen, supra*, analyzed whether summary jurisdiction existed where the trustee filed a compulsory counter-claim objecting to the creditor's claim for reimbursement. The counter-claim alleged that two earlier payments by petitioner, a corporate officer of the bankrupt company, constituted voidable preferences, and, accordingly, sought a judgment. The petitioner objected to the counter-claim being tried in summary fashion by the Bankruptcy Court. The *Katchen* court conceded that the former Bankruptcy Act did not expressly confer summary jurisdiction upon the court to order the petitioner to surrender the preferences.

*Katchen, supra*, 382 U.S. at 329, 86 S.Ct. at 472. Justice White, writing for the court, concluded, however, that the creditor's filing of a claim constituted sufficient consent to the Bankruptcy Court's jurisdiction to hold that the referee properly exercised his jurisdiction in passing on the trustee's objection, but acknowledged that, absent consent by filing the claim, the action would not have been triable in equity under the Act. *Id.*, at 335–36, 86 S.Ct. at 475–76. Read closely, *Katchen, supra*, stands for the proposition that when a creditor filed a claim in a bankruptcy proceeding, he submitted himself to the summary jurisdiction of the Bankruptcy Court under the old Act.

The *Katchen*, opinion is limited in its application to the instant case because *Katchen* was decided under the old Bankruptcy Act, in which it was clear that Bankruptcy Courts possessed *only* summary jurisdiction. Exercise over an otherwise plenary action occurred only when the creditor consented. Of course, if the creditor's actions were deemed consent, as in *Katchen, supra*, the creditor was precluded from subsequently objecting to the Bankruptcy Court's trying the action because of the Seventh Amendment. *Katchen, supra*, has been read recently for propositions it never held initially, to wit, that actions, formerly plenary under the Act, but often consented to for summary adjudication by creditors, are now wholly equitable proceedings (*See, e.g., In re Baldwin-United Corp.*, 48 B.R. 49, 12 B.C.D. 913, 917 (Bankr.S.D.Ohio 1985) and Professor King's subsequent criticism, *King, supra*, 689, n. 44); or that all core proceedings in our current jurisdictional scheme are equitable, hence, no jury trial need be granted. *See, In re Duncan*, 51 B.R. 71, 13 B.C.D. 229, 230 (Bankr.D.Md.1985); *In re O'Bannon*, 49 B.R. 763, 765–66 (Bankr.M. D.La.1985). Those limited legal actions which the Bankruptcy Court finds are core proceedings and require a jury trial under the Seventh Amendment cannot be released from that requirement by claiming that their adjudication by the Bankruptcy

Court transforms such legal actions into an equitable proceeding.

Courts holding that core proceedings which require a jury trial may be held in Bankruptcy Court include *In re Boss-Linco Lines, supra; In re Blackman,* 55 B.R. 437, 13 B.C.D. 1013 (Bankr.D.D.C.1985); *In re OPM Leasing,* 48 B.R. 824, 13 B.C.D. 114 (S.D.N.Y.1985); *In re Mauldin,* 52 B.R. 838, 13 B.C.D. 603 (Bankr.N.D.Miss. 1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (M.D.Ga.1985); *In re Gibbons Construction, Inc.,* 46 B.R. 193 (Bankr.E.D.Ken.1984); *In re Lombard Wall, Inc.,* 48 B.R. 986, 13 B.C.D. 236 (S.D. N.Y.1985); *In re Rodgers,* 48 B.R. 683 (Bankr.E.D.Okla.1985). *But see, In re Best Pack Seafood, Inc.,* 45 B.R. 194 (Bankr.D.Me.1984); *In re American Energy,* 50 B.R. 175, 13 B.C.D. 200 (Bankr.D.N. D.1985); *M & E Contractors,* Case No. 384–31135 F–11; Adv. No. 385–3025 (Bankr.N.D.Tex.1985).

The fear that allowing a jury trial in certain adversary proceedings in Bankruptcy Court will ultimately clog the bankruptcy system is a possibility. However Seventh Amendment rights have to be taken into account regardless of such possible impact. Shifting any such jury trials to District Courts, will not necessarily expedite the process because their dockets are no less crowded, and, hence, able to be rescheduled to permit speedy resolutions of bankruptcy proceedings. *See, In the Matter of Paula Saker,* 37 B.R. 802, 810 (Bankr.S.D.N.Y.1984).

Generally, courts interpreting the right to a jury trial under the 1978 Bankruptcy Code, prior to *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Marathon"), utilized two approaches, to wit, a summary-plenary analysis and a Seventh Amendment analysis. The starting point for both approaches was found in 28 U.S.C. § 1480(a) which provided:

> Except as provided in subsection (b) of this section, this chapter and title 11 do not effect any right to trial by jury, in a case under title 11 or arising in or related

to a case under title 11, that is provided by any statute in effect on September 30, 1979.

One of the better discussions regarding the summary-plenary analysis was found in *In re Mozer,* 10 B.R. 1002 (Bankr.D.Col.1981) in which the court concluded that the Congressional intent behind § 1480 was to evaluate whether the cause of action would have been classified as summary or plenary on September 30, 1979, the last day of the Act. *Mozer, supra,* at 1004. The *Mozer* court suggested the following three-tiered analysis for determining whether to grant a jury trial: (1) whether the proceeding was summary or plenary on September 30, 1979; (2) if plenary, where the action could have been brought; and (3) does the applicable law require a jury trial. *Id.* at 1005–1008. *See also, In re Portage Associates, Inc.,* 16 B.R. 445 (Bankr.N.D.Ohio 1982).

The summary-plenary analysis is cumbersome, and, as a practical matter, may ultimately require a modified Seventh Amendment analysis because many "summary" proceedings under the Act were summary only by virtue of either explicit or implicit consent by the creditor. Thus, the focus of the court would have to center on the underlying issues in the proceeding and whether those issues actually sounded in law. Moreover, a summary-plenary analysis appears to ignore Congress' intent when enacting the 1978 Bankruptcy Code. For a general discussion, *see,* Levy, *Trial by Jury Under the Bankruptcy Reform Act of 1978,* 12 Conn.L.Rev. (1979).

The Seventh Amendment test was utilized by a number of courts who concluded that the promulgation of the 1978 Bankruptcy Code abolished the summary-plenary distinction. These included *Matter of Paula Saker, supra; In re Professional Air Traffic Controllers Org.,* 23 B.R. 271, 273–74 (D.D.C.1982); *In re First Fin. Group of Texas, supra; see, also, In re Martin Baker Well Drilling, Inc.,* 36 B.R. 154–155–56 (Bankr.D.Me.1984). The Seventh Amendment analysis adopts the inquiry suggested in a footnote in *Ross, supra,* to determine the " 'legal' nature of an

issue." *Ross, supra,* 538, n. 10. The *Ross* court suggested considering the custom in use prior to the merger of law and equity custom of the issue, the remedy sought and the practical abilities and limitations of juries. *Id.* The focus of the Seventh Amendment analysis on the nature of the underlying issue is especially helpful in determining, post-BAFJA, whether the proceeding requires a jury trial, and such analysis has been utilized recently by several different courts. *See, e.g., In re Boss-Linco Lines, supra; In re OPM Leasing, supra.*

■ 28 U.S.C. § 1411 appears to be the successor to § 1480.[6] The term "successor" cannot be used without a qualifier, however, because of the general confusion in the enactment of BAFJA. The Congress passed two provisions referencing the effective date of enactment which contradicted one another, thus, leaving § 1480 arguably intact, although some commentators and courts discussing this problem conclude that § 1480 was at least implicitly repealed. *See generally,* King, *supra,* at 703, n. 79. An accurate reading of § 1411 shows that it merely modifies the right to jury trials in Bankruptcy Courts without eliminating them altogether. *See, e.g., In re Morse Electric Co.,* 47 B.R. 234, 238 (Bankr.N.D.Ind.1985); *In re Rodgers & Sons, Inc.,* 48 B.R. 683, 686–87 (Bankr.E.D. Okla.1985). A reasonable explanation of the intent of § 1411 is that subsection (a) was intended to retain jury trials for U.S. District Courts in those two particular proceedings, to wit, personal injury and wrongful death, which otherwise may have been denied in light of *Marathon's* strictures against adjudication of purely State law proceedings. *See,* 28 U.S.C. § 157(b)(5). The fact that Congress referred to these two specific actions and provided for District Court adjudication does not implicitly prohibit any other proceedings which would otherwise require a jury trial from being tried before a jury. Any contrary assumption is unsupported by legislative history. Subsection (b) specifies issues arising under § 303, *i.e.,* involuntary bankruptcy proceedings may be tried without a jury, but does not eliminate that right for all proceedings which otherwise may require a jury trial. Section 1411 does not appear to prohibit jury trials in Bankruptcy Court.[7] This conclusion is sup-

6. 28 U.S.C. § 1411 provides
    (a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.
    (b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

7. Professor King argues that § 1411 merely secures the right to a jury trial in the two types of proceedings listed above, but otherwise eliminates the right to trial by jury because the Bankruptcy Court is inherently a court of equity with no right to a jury trial. The problem with this analysis is that it assumes that somehow BAFJA resurrected the notion that only summary jurisdiction was available to Bankruptcy Courts. Not only is this assumption unsubstantiated, it results in rather harsh results; the matters covered by § 157(b)(2) could include proceedings which are not equitable in nature, thus, requiring a jury trial under the Seventh Amendment. Thus, a determination that a proceeding is core would result in an action being tried without jury in spite of the litigant's rights under the Seventh Amendment. This contravenes *Mara-*

*thon, supra,* and, as Professor King notes, results in the current jurisdictional scheme being unconstitutional. King, *supra,* at 689, n. 44. A less cataclysmic interpretation views § 1411 as restricting the right to jury trials but not eliminating that right to jury trials in Bankruptcy Court. *See, Ross, supra,* at 538, *citing, Fleitmann v. Welsbach St. Lighting Co.,* 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 (1916) for the proposition that "legal claims are not magically converted into equitable issues by their presentation to a court of equity ..." Rather than returning to the former summary-plenary analysis when determining the right to a jury trial, this Court will analyze whether the Defendant's jury demand is required under the Seventh Amendment. Because the order of reference in this District did not require that the District Court try those limited number of cases which are both core and require jury trials, the limited number of core jury trials will be held in this Court. Such interpretation rests on consistent readings of both *Marathon, supra* and *Katchen, supra.* Moreover, the primary Constitutional objection to the 1978 Bankruptcy Code centered on Congress' vesting of Article III attributes in the Bankruptcy Courts. Currently, jurisdiction is vested in the Federal District Courts, which

ported by subsequent statements of key legislators, although those statements should not be regarded as binding. *See, M & E Contractors, supra,* at 5, n. 2; *In re Rodgers & Sons, supra,* at 686–87.

Rather than imputing Congressional intent to eliminate jury trials implicitly because § 1411 specifies only certain actions, it is more reasonable and likely to conclude that an issue as significant as jury trials would be explicitly prohibited if that were the legislature's aim. Construing § 1411 to modify existing rights to jury trials in Bankruptcy Courts comports more closely with the statute's language than assuming that § 1411 is an inartfully drafted prohibition against jury trials in Bankruptcy Courts.

A separate ground for granting the Defendant's jury demand exists in Bankruptcy Rule 9015. The court in *Rodgers, supra,* noted that

It is significant that Rule 9015, adopted by the Supreme Court and enacted by Congress, without change, more than a year after the *Marathon* decision and several months after promulgation of the Emergency Rule, contains no indication that the bankruptcy court's exclusive power to hold jury trials in cases and proceedings is abridged or curtailed by either *Marathon* or the Emergency Rule. Indeed the Second Circuit articulated that the Bankruptcy Rules were promulgated with full awareness of *Marathon* and the Emergency Rule and that 'these Bankruptcy Rules can be presumed to be constitutional.' *Salomon v. Kaiser,* 722 F.2d 1574, 1579 (2nd Cir.1983).

*Id.* at 686. The *Rodgers* court further notes that Bankruptcy Rule 9001(2) eliminates any confusion that might otherwise surface as to whether Rule 9015 refers to the Bankruptcy Court or the District Court because it provides that the term "court" include the Bankruptcy Courts. *Id.* at 686, n. 2. *See also, M & E Contractors, supra,* at 20. The *M & E Contractors* court also

suggests that Rule 9027 supports the conclusion that a Bankruptcy Court may conduct a jury trial. *Id.* at 20. The *M & E Contractors* court, however, still questions the right to trials in Bankruptcy Courts under Rule 9015 because the Rule does not specify "Bankruptcy Court". *Id.* at 20. This statement appears to overlook the structure of the Code and Rules in which a term of art is defined in a particular section and then referred to throughout without continual redefinition. Prior to *Marathon* and the BAFJA amendments, the Bankruptcy Court's right to try a proceeding with a jury was accepted; any subsequent restriction on that right would necessarily state it explicitly. Rule 9015 provides merely that the right to a jury trial shall be determined by the court. Rule 9015(b). This is presumed to be the Bankruptcy Court. *See, Hayutin v. Grynberg,* 52 B.R. 657, 13 C.B.C.2d 819, 823 (Bankr.D.Col. 1985). The issue to be determined by the court is whether the proceeding is "triable of right by jury." Accordingly, this Court concurs with the court in *Baldwin-United Corporation, supra,* when it stated that "[w]hile it is subject to debate whether 28 U.S.C. § 1480 of the 1978 Code remains in effect, it is beyond question that Bankruptcy Rule 9015 was left untouched by Congress and is still viable." *Baldwin-United, supra,* at 914.

The focus of this Court must be, therefore, on whether there is an issue triable by right before a jury. Several courts have held that the 1984 amendments contemplated a return to the traditional summary-plenary analysis. These courts conclude that core proceedings are tantamount to summary proceedings under the Act. *See, e.g., In re Lee,* 50 B.R. 683, 13 B.C.D. 215 (Bankr.D.Md.1985) in which the court states that the legislative history supports a conclusion that the core/non-core distinction is a return to the summary-plenary analysis under the Act, citing to Cong.Rec. S8887–8889. A review of the statements

---

can theoretically revoke their reference from the Bankruptcy Courts. Thus, no Congressional impairment of Article III now exists, at least in

theory. The right to a jury trial in bankruptcy proceedings survives the BAFJA amendments.

contained in those pages reveals no such clear intent; further, if the legislative intent had been to return intact to the former summary-plenary jurisdiction of the Act, Congress could have easily utilized those terms. Other courts, nonetheless, have assumed that the current jurisdictional framework replicates the summary-plenary analysis without necessarily finding any underlying basis for that conclusion. *See, e.g., In re Best Pack Seafood, supra; M & E Contractors, supra.*

■ That certain disputed issues historically sound in law does not exclude, *per se,* their inclusion as core proceedings, nor does the designation as a core proceeding transform a historically legal action, with a right to a jury trial, into an equitable one. *See, In re OPM Leasing, supra.* Treating all bankruptcy proceedings deemed core as equitable, and, thus, restricting those issues to summary jurisdiction, requires a loose reading of both *Marathon* and *Katchen.*

■ The better reasoned approach utilizes a Seventh Amendment analysis as set forth in *Ross, supra,* focusing on the underlying issues and the remedy sought. *In re Rodgers, supra; In re Boss-Linco Lines, supra; In re OPM Leasing, supra.* In the instant case, a determination as to the validity of the Debtor's homestead claim pursuant to art. 16(50) of the Texas Constitution and the concomittant determination in light of art. 16(50) of the validity of Deféndant's lien requires a jury trial on those limited issues.

■ The bulk of the underlying issues concerns whether the Debtor claiming the homestead has actually complied with the requirements under Texas law regarding homestead rights. Generally, the issues will focus on whether the Debtor has shown the requisite intent and consistent usage of the homestead to support his claim. These are issues of fact which are to be determined by a jury under Texas law. *See generally,* 43 *Tex.Jur.3rd, Homestead,* § 63, *citing, Foley v. Holtkamp,* 66 S.W. 891 (Tex.Civ.App.1902, writ ref'd.); *Steves v. Smith,* 107 S.W. 141 (Tex. Civ.App. 1908, writ ref'd.). *See also, Sims v. Beeson,* 545 S.W.2d 262 (Tex.Civ.App.— Tyler 1976, writ ref'd. n.r.e.). The homestead right does not arise from common law, but from a Texas statute. *See, Gann v. Montgomery,* 210 S.W.2d 255 (Tex.Civ. App.—Fort Worth, 1948, writ ref'd. n.r.e.). Thus, a historical analysis is unnecessary. The Defendant has asserted several affirmative defenses, but these defenses will not be reached until the homestead issues are decided. The dispute ultimately reduces itself into a declaratory judgment as to the ownership of title in light of art. 16(50) of the Texas Constitution, although the effect of this determination is squarely a bankruptcy issue.

The instant action differs from traditional fraudulent conveyance claims because of the limited underlying homestead issues. For a discussion of traditional fraudulent conveyance actions, *see, In re Graham, supra; In re OPM Leasing, supra, In re Boss-Linco Lines, supra.* The Court will grant the Defendant's jury demand as limited herein.