**M & E CONTRACTORS, INC.,**

**v.**

**KUGLER–MORRIS GENERAL CONTRACTORS, INC.**

**SATELCO, INC.**

**v.**

**NORTH AMERICAN PUBLISHERS, INC., et al.**

**Richard WOLFE**

**v.**

**FIRST FEDERAL SAVINGS & LOAN ASS'N OF PARAGOULD.**

Nos. CA 3–86–0334–R, CA 3–86–0937–R and CA 3–86–0311–R.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 28, 1986.

E.P. Keiffer, Palmer, Palmer & Coffee, Jay M. Vogelson, Jay A. Kania, Moore & Peterson, Robert L. Hoffman, D. Bradley Kizzia, Strasburger & Price, Dallas, Tex., for plaintiff.

Jeanne Crandall, Moore & Peterson, Dallas, Tex., Walter S. Fortney, Pamela Arnold Owen, Law, Snakard & Gambill, Fort Worth, Tex., Rosemary J. Zyne, Geoffrey A. Gerard, Dallas, Tex., Charles W. Zahn, Jr., Jon K. Barton, Corpus Christi, Tex., Thomas Connop, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., Kenneth M. Morris, Houston, Tex., for defendant.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This opinion concerns the Bankruptcy Amendments Act, 11 U.S.C. § 101 *et seq.*. It resolves a conflict between two insightful, but conflicting, decisions by the bankruptcy judges in the Dallas Division of this district—*see M & E Contractors, Inc. v. Rodgers Construction, Inc.*, CA 3–85–0477–R (Jan. 2, 1986) (Abramson, J., bank-

ruptcy courts *may not* conduct jury trials in core proceedings) and *Wolfe v. First Federal Savings and Loan Ass'n*, 68 B.R. 80 (Bankr.N.D.Tex. 1986) (McGuire, J., bankruptcy courts *may* conduct jury trials in core proceedings) [1]—and it holds that:

1. Bankruptcy courts may conduct jury trials in "core" proceedings under the Bankruptcy Amendments Act ("the Act").

2. Adversary proceedings that rest solely in issues of state law—such as collection suits by a debtor in bankruptcy against non-creditor defendants—are not "core" proceedings, but are "related" or "noncore" matters.

3. Unless the parties consent, bankruptcy courts have no jurisdiction to hear such "related" or "noncore" matters, except to submit proposed findings of fact and conclusions of law and recommendations to the district court, subject to *de novo* review under 28 U.S.C. § 157(c)(1).

## I. The Cases

Three cases are involved in this opinion; each illustrates a distinct aspect of the complex relationship between the bankruptcy courts, the district courts, and the constitution.

*Wolfe.* Richard Wolfe, debtor, seeks to have a conveyance of his homestead declared invalid, thereby voiding the secured claims of a creditor bank. First Federal Savings & Loan wants the homestead conveyance upheld and its claim deemed secured, so it can proceed with foreclosure; First Federal also asserts a counterclaim under the Texas Deceptive Trade Practices Act, Texas Business & Comm.Code Ann. § 1741 *et seq.*. A demand for a jury trial was filed by First Federal. The parties stipulated that the issues involved a core proceeding, but Wolfe argued that the bankruptcy court was without jurisdiction to hold a jury trial. Judge McGuire disagreed, and ruled that the bankruptcy court could hold a jury trial in a core proceeding. This appeal by *Wolfe* followed.[2]

*Satelco.* Satelco, debtor, has filed numerous adversary proceedings, seeking to recover amounts owed by 19 companies for long distance telephone service provided by Satelco before it filed for Chapter 11 relief. The bankruptcy court raised, *sua sponte*, the question of its jurisdiction to hear and finally adjudicate a dispute which was based solely "upon state contract law." Judge Abramson found that he had no jurisdiction over these collection suits, and granted the parties leave to move to "abate these proceedings pending a determination from an appropriate state law forum." Satelco moved in the district court for a withdrawal of the reference of these 19 separate adversary proceedings to the bankruptcy court.

*M & E Contractors.* M & E contractors, debtor, filed a complaint to recover a debt from a subcontractor. The subcontractor counterclaimed for damages, alleging breach of contract and negligence, and made a timely demand for a jury trial. However, in another adversary proceeding involving M & E Contractors, Judge Abramson held that the bankruptcy court was "without power to conduct jury trials," even in core proceedings. The subcontractor thus moved to withdraw the reference of this adversary proceeding.

## II. The Act

Bankruptcy courts, of course, do not have the constitutional characteristics of Article III courts; instead, they exercise power delegated from the federal district courts under the Bankruptcy Amendments Act. That Act was "designed to narrow

---

1. *See also Satelco, Inc. v. North American Publishers, Inc.*, 58 B.R. 781 (Bankr.N.D.Tex.1986) (Abramson, J.).

2. Judge McGuire also held that the bank's deceptive trade practices claim "was sufficiently peripheral to this bankruptcy proceeding to support designation as a related proceeding." Therefore, he indicated that he would consider abstaining on this issue, 28 U.S.C. § 1334(c)(1), or would retain the related proceeding if the parties consented for him to try it under 28 U.S.C. § 157(c)(2).

the delegation of authority to bankruptcy judges—that had resulted in invalidation of portions of the former bankruptcy regime —by, *inter alia*, authorizing the district courts to exercise *all* bankruptcy jurisdiction." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir.1985) (Jones, J.). The district courts, in turn, refer to the bankruptcy courts "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11:" 28 U.S.C. 157(a). Regardless of this blanket reference,[3] the district court may "for cause shown" withdraw, in whole or in part, any matter that should be decided in the district court. See id. at 157(d); *see also Carlton v. BAWW, Inc.*, 751 F.2d 781, 787–88 (5th Cir.1985).

The language of the Act, however, is very broad. Indeed, it is possible to construe some of the provisions to permit a bankruptcy court to exercise jurisdiction even over claims which rest solely in issues of state law, like the adversary proceedings in *Satelco* and *M & E Contractors. See, e.g.,* 28 U.S.C. 157(b)(2)(O) (other proceedings "affecting the liquidation of assets of the estate"); *but see In re George Woloch Co., Inc.,* 49 B.R. 68 (E.D.Pa.1985) (sweeping interpretation not mandated by Congress). The breadth of the Act's language has led to substantial confusion concerning the jurisdictional provisions of § 157(b). *See, e.g., M & E Contractors,* slip op. at 4–9 (citing numerous cases). And, this confusion has resulted in a split of authority between the bankruptcy judges of this division as to their jurisdictional limits and their ability to conduct jury trials in core proceedings.

### III.  The state law claims

Central to this opinion—and to the confusion discussed by both bankruptcy judges—is a determination of the scope and meaning of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598

(1982). Although the *Marathon* plurality struck down the entire bankruptcy act because it "removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and ... vested those attributes in a non-Art. III adjunct," *id.* at 87, 102 S.Ct. at 2880, other members of the Court limited the opinion's potentially broad holding. Justices Rehnquist and O'Connor, concurring, and Chief Justice Burger, dissenting, reasoned that:

> "... the Court's holding is limited to the proposition stated by Justice Rehnquist ... that a 'traditional' state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an 'Art. III court' if it is to be heard by any court or agency of the United States."

*Id.* at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting). The Court's most recent decision involving *Marathon* solidified this construction; in *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), Justice O'Connor, in an opinion joined by each Justice, stated that:

> "The Court's holding in that case [*Marathon*] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review."

*Id.* at ——, 105 S.Ct. at 3334–35. The Supreme Court, then, has itself limited the scope of *Marathon.*

This recognition of *Marathon's* narrowed holding comes as little surprise in this circuit, which has consistently assumed that *Marathon's* scope was limited. *See, e.g., Braniff Airways, Inc. v. Civil Aeronautics Board,* 700 F.2d 214 (5th Cir.1983); *In*

---

**3.** Accomplished in this district by Miscellaneous Order No. 33, "Special Order Relating to Bank-

ruptcy Cases," effective August 3, 1984.

*re Davis,* 730 F.2d 176, 182 (5th Cir.1984) ("This circuit ... has refused to accord *Marathon* the broad sweep urged by petitioners"); *United States v. Westside Bank,* 732 F.2d 1258, 1264 n. 18 (5th Cir.1984); *Mitsubishi Int'l Corp. v. Clark Pipe & Supply,* 735 F.2d 160, 162 (5th Cir.1984); *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 998 (5th Cir.1985) (bankruptcy courts have no jurisdiction "over adversary proceedings that do not intimately involve the debtor-creditor relationship and rest solely in issues of state law"). Other circuits have reached similar conclusions.[4]

However, this narrow interpretation of *Marathon* mandate cannot enlarge the jurisdiction of the bankruptcy courts beyond the constitutional limits of Article III. This causes difficulty because certain provisions of the Act are so broad that their terms seem to encompass "traditional" common law actions based solely upon state law.[5] Specifically, the two "catch-all" sections, 28 U.S.C. 157(b)(2)(A) and (O) could, arguably, be read to include the collection suits and contract claims presented in *Satelco* and in *M & E Contractors*—(A) provides that "matters concerning the administration of the estate" are core matters, and (O) provides that "other proceedings affecting the liquidation of the assets of the estate" are core proceedings.

Judge Abramson, in *M & E Contractors v. Rodgers,* CA 3-85-0477-R (Jan. 2, 1985), raised "serious concerns about the constitutionality" of the second catch-all clause, but felt constrained from addressing this problem because of the limited nature of this Court's remand in that case. *See id.* at 27, 11–12 n. 5. This Court is not so restrained, and it specifically recognizes that 28 U.S.C. 157(b)(2)(O) would clearly contravene *Marathon* and Article III if given a literal reading. However, it is a "fundamental rule of judicial restraint" that a statute with a permissible interpretation should be given that interpretation, rather than being struck down as unconstitutional. *Jean v. Nelson,* 472 U.S. 846, 854–55, 105 S.Ct. 2992, 2997–98, 86 L.Ed.2d 664 (1985); *see also Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 441, 5 L.Ed. 257 (1821). This course can be followed in interpreting the jurisdictional grants in § 157(b), including the two "catch-all" provisions.

Therefore, state-law claims, such as those pressed in the *Satelco* and *M & E Contractors* adversary proceedings, must be considered non-core or related matters, rather than core proceedings. "[W]e are persuaded that a court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems." *Piombo Corp. v. Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986) (finding that broad reading of 157[b][2] should be tem-

4. *See Goldstein v. Kelleher,* 728 F.2d 32, 35 (1st Cir.1984); *In re Lafayette Radio Electronics Corp.,* 761 F.2d 84, 91 (2d Cir.1985); *In re President's Comm'n on Organized Crime,* 783 F.2d 370, 376 (3d Cir.1986); *Harman v. Levin,* 772 F.2d 1150, 1153 n. 3 (4th Cir.1985); *Rhodes v. Stewart,* 705 F.2d 159, 160 (6th Cir.1983); *Hopkins Illinois Elevator Co. v. Pentell,* 777 F.2d 1281, 1285 n. 4 (7th Cir.1985); *Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1040 (7th Cir.1984); *Rosen-Novak Auto Co. v. Honz,* 783 F.2d 739, 742 n. 5 (8th Cir.1986); *In re Black & White Cattle Co.,* 783 F.2d 1454, 1457 (9th Cir.1986); *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986); *Boise City Farmers Co-Op v. Palmer,* 780 F.2d 860, 863 (10th Cir.1985); *Committee of Unsecured Creditors of F.S. Communications Corp. v. Hyatt Greenville Corp.,* 760 F.2d 1194 (11th Cir.1985).

5. Although both of this division's bankruptcy judges, whose opinions struggled to interpret the 1984 Bankruptcy Amendments Act, were too judicious to condemn the Act and its scant legislative history, this Court must note that the vagueness of the Act approaches an abdication of the responsibilities of the Congress that adopted the Act. *Cf. Wolfe v. First Federal Savings and Loan Ass'n,* 68 B.R. 80, 87 (Bankr. N.D.Tex.1986), (McGuire, J., pointing to the "confusion" in the law's enactment), and *M & E Contractors, Inc. v. Rodgers Construction, Inc.,* CA 3-85-0477-R, slip op. at 5 n. 2 (Abramson, J.: "Congress has seen fit not only to bless the bar and bench with a statute whose meaning is virtually impossible to define, but has also failed to publish any legislative history which could validly be cited as persuasive authority").

pered by *Marathon* ). *See also Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464, 466 (D.Mass.1985); *Morse Electric Co., Inc. v. Logicon, Inc.,* 47 B.R. 234, 237–38 (Bankr.N.D.Ind.1985); *Cameron v. Anderson,* 50 B.R. 175, 178 (Bankr.D.N.D.1985).

█ Judge Abramson specifically found that the *M & E Contractors* dispute was "based upon state law contract principles" with "no basis for federal jurisdiction, other than the fortuitous filing of a bankruptcy petition by Debtor"; he concluded that the "circumstances present in *Marathon* are thus mirrored by the instant proceeding." *M & E Contractors,* slip op. at 8. Judge Abramson also held that the debtor's collection suits in *Satelco* were based solely "upon state contract law." In such cases, the Act cannot provide jurisdiction in the bankruptcy court. "A different construction of [section] 157 would require explicit rejection of the *Marathon* mandate." *Pierce v. Airport Development Corp.,* 44 B.R. 601, 602 (D.Colo.1984). Although a "logical" reading of the entire statute may lead to a contrary conclusion, *see M & E Contractors,* slip op. at 7–9, the supposed logic of Congress must yield to the requirements of the constitution.[6]

In light of this conclusion, this Court need not criticize the reasoning of the handful of cases cited in *M & E Contractors,* slip op. at 7–8—which reasoned that Congress intended to cure *in toto* the constitutional defects pointed out in *Marathon*

and which, consequently, provide § 157(b)(2) with an expansive construction. Regardless of Congress' intention, the sections that are the subject of this opinion are simply not consistent with Article III if read broadly enough to encompass claims based entirely in state law—like the collection suits in *Satelco* and the contract and negligence claims in *M & E Contractors.* Accordingly, in the absence of consent of the litigants, the bankruptcy courts have no jurisdiction of these claims.

## IV. The core claims

█ Just as Congress cannot vest jurisdiction in a court that cannot receive it, it cannot limit the seventh amendment right to a jury trial. For this reason, any portions of the Bankruptcy Amendments Act that limit the right to jury trial must be read narrowly to save them from a finding of constitutional infirmity. The necessary result of this analysis is a determination that bankruptcy courts can—and, indeed, must—preside over jury trials in core proceedings. The practical effect of this decision, however, will be limited: by its terms, the seventh amendment attaches only to "suits at common law"; and, because most suits "at common law" will be non-core or related proceedings rather than core proceedings, and thus triable in state courts or in the federal district court, the opportunity

---

**6.** This construction has a time-honored stance in Article III adjudication. It rests on the proposition that the demands of the constitution are superior to the wishes of the legislature; although the legislature's views are entitled to judicial deference, it is the duty of the court to determine whether a mere statute exceeds the constitution. *See Marbury v. Madison,* 5 U.S. (1 Cranch.) 137, 163, 2 L.Ed. 60 (1803). Chief Justice Marshall also encountered the dilemma of a congressional act depositing Article III powers in a non-Article III court, and concluded that such courts are simply incapable of receiving such power—regardless of the intent of Congress in allocating the judicial power. *See American Ins. Co. v. Canter,* 26 U.S. (1 Pet.) 511, 546, 7 L.Ed. 242 (1828); *see also Ex parte Bakelite Corp.,* 279 U.S. 438, 449, 49 S.Ct. 411, 412–13, 73 L.Ed. 789 (1929). Indeed, in the watershed

case of *Murray's Lessee v. Hoboken Land and Improvement Co.,* 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1856), the Court stated that "to avoid misconstruction on so grave a subject, we think it proper to state that we do not consider Congress can withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination." *Id.,* 59 U.S. at 284; *see also Crowell v. Benson,* 285 U.S. 22, 49, 52 S.Ct. 285, 291–92, 76 L.Ed. 598 (1932). It seems beyond question that Article III limits the discretion of Congress in conferring jurisdiction on courts of its creation. To the extent that 157(b)(2)(A) or (O) exceeds permissible bounds, the sections must either be read narrowly or struck down.

for jury trials in bankruptcy courts will be limited, indeed.[7]

██ The ability to conduct a jury trial is not an exclusive function of an Article III court. *Marathon* is not to the contrary; Justice Brennan merely listed the ability to hold jury trials as a characteristic of the discredited bankruptcy scheme. *See id.*, 458 U.S. at 85, 102 S.Ct. at 2878–79. He did not state, explicitly or implicitly, that only Article III courts may preside over jury trials; indeed, the affirmance of the magistrate system—which permits magistrates to try jury cases with the consent of the parties—supports the conclusion that jury trials may be held in bankruptcy courts.[8] *See United States v. Raddatz*, 447 U.S. 667, 682, 100 S.Ct. 2406, 2415–16, 65 L.Ed.2d 424 (1980).

Therefore, the correct determination of whether a jury trial is required in core bankruptcy proceedings must follow a seventh-amendment analysis, just as Judge McGuire recognized in *Wolfe*.[9] This Court will not retrace Judge McGuire's analysis, or that of other courts and commentators dealing with the issue of jury trials in the bankruptcy courts. *See Wolfe*, 68 B.R. at 84–89; *see also* Countryman, *Scrambling to Define Bankruptcy Jurisdiction: The Chief Justice, The Judicial Conference and the Legislative Process*, 27 *Harv.J. on Legis.* 1 (1985); *In the Matter of Paula Saker*, 37 Bankr. 802 (Bankr.S.D.N.Y.1984) (applying seventh amendment test); *In re Professional Air Traffic Controllers Org.*, 23 B.R. 271, 273–74 (D.Me.1984) (same); *In re First Financial Group of Texas*, 11 B.R. 67 (Bankr.S.D.Tex.1981) (same). However, the basic outline of this seventh amendment test will be summarized.

██ The premise that no jury trial need be considered by the bankruptcy court because all bankruptcy matters are "inherently equitable" can be traced, as noted by Judge McGuire, to an overly broad reading of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). *See, e.g., In re O'Bannon*, 49 B.R. 763, 765–66 (Bankr.M.D.La.1985). *Katchen* was decided under the 1898 act, in which bankruptcy courts possessed only summary jurisdiction; it cannot be read for the proposition that all core proceedings are, by definition, equitable. To ascertain whether the seventh amendment attaches, reference must be made to the common law at the time of the adoption of the amendment, *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935); "legal claims are not magically converted into equitable issues by their presentation to a court of equity," and Congress cannot transform a legal pro-

---

**7.** This practical result is not unwelcome. Judge McGuire specifically noted: "The fear that allowing a jury trial in certain adversary proceedings in Bankruptcy Court will ultimately clog the bankruptcy system," but concluded that "Seventh Amendment rights have to be taken into account regardless of such possible impact." *Wolfe*, 68 B.R. at 85–86.

**8.** It may, of course, be argued that *Raddatz* involved an adjunct system in which jury trial is held by the magistrate *only* upon consent of all the parties; this, however, is an irrelevant distinction. If, in fact, the power to hold a jury trial were exclusively an Article III function, private parties would not be able to unilaterally vest a court with Article III powers it is incapable of receiving. *See ante* note 3.

**9.** Judge Abramson reached the logical interpretation of the sections of the bankruptcy act implicated in the jury-trial question. *See M & E Contractors*, slip op. at 17–20. Although the statute is, again, irresponsibly vague and difficult to interpret, a logical construction leads to the conclusion that Congress would permit jury trials in bankruptcy courts. Section 1411(a) provides that the bankruptcy sections "do not affect any right to trial by jury;" the section does not, however, specify the forum for a jury trial. Bankruptcy Rule 9015 states that the right to a jury trial is preserved, but again does not specify the forum. It does, however, refer to "court," and "court" is defined under rule 9001(2) to mean "the United States Bankruptcy Court." As Judge Abramson concluded, "it might seem that the Supreme Court, and Congress by virtue of its adoption of the rules, intended that the bankruptcy court may order a trial by jury." *M & E Contractors*, slip op. at 20. Rule 1001 provides that all rules govern procedure in the "United States Bankruptcy Courts"; this section implies that all the above rules apply to procedure in the bankruptcy court rather than the district court, and "appears to contemplate a jury trial by the bankruptcy court." *M & E Contractors*, slip op. at 20.

ceeding into an equitable proceeding and thus abrogate the terms of a constitutional provision. *Fleitmann v. Walsbach St. Lighting Co.*, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 (1916); *see Macon Prestressed Concrete v. Duke*, 46 B.R. 727 (M.D.Ga. 1985); *In re Gibbons Constr., Inc.*, 46 B.R. 193 (Bankr.E.D.Ky.1984); *In re Rodgers*, 48 B.R. 683 (Bankr.E.D.Okla.1985). *See also Ross v. Bernhard*, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970) (suggesting court should determine " 'legal' nature of an issue"). A litigant does not abandon constitutional protections simply because the proceedings are in a bankruptcy court.[10]

■ There are, of course, countervailing policies favoring non-jury adjudications in the bankruptcy court. The most notable of these is speed—the "delay and expense of trial by jury of these core proceedings would frustrate the expeditious and effective administration of bankruptcy cases." *In re Best Pack Seafood, Inc.*, 45 B.R. 194, 195 (Bankr.D.Me.1984), cited with approval in *M & E Contractors*, slip op. at 25. *It is probable that this is true; it is certain, however, that it is irrelevant.* "Seventh amendment rights have to be taken into account regardless of such possible impact." *Wolfe*, 68 B.R. at 86. Neither would a wholesale diversion of jury trials to district courts alleviate delays, considering the state of the typical federal district court docket. *See Paula Saker*, 37 B.R. at 810. Nevertheless, a clear constitutional right must simply take precedence over even per-

suasive, congressionally-based arguments of policy.

■ Two distinct inquiries must, then, be undertaken when a demand for a jury trial is filed in the bankruptcy court. That court must first determine whether a proceeding is core or related, and must be informed in this inquiry not only by the applicable provisions of the Act, but also by *Marathon*. If the proceeding is related, the bankruptcy court may proceed with the jury trial only with the consent of the parties. 28 U.S.C. § 157(c)(2). If, however, the proceeding is core, another step must be taken; the bankruptcy court must then determine whether the particular action would require a jury trial under the seventh amendment, that is, whether the proceeding sounds in law or in equity.

■ Under this test, Judge McGuire was correct in *Wolfe* when he held that a jury trial was proper under the facts of that case. First, the court properly determined that the matter was a core proceeding—except, of course, for the bank's counterclaim under the Texas Deceptive Trade Practices Act.[11] Second, the issues presented sound in law rather than equity; the homestead right arises from a Texas statute under which there is a right to a jury trial. *See Wolfe*, 68 B.R. at 89; *cf. In re Graham*, 747 F.2d 1383, 1387 (11th Cir.1984).

## V. Motions for withdrawal of reference

Although the district courts may exercise federal bankruptcy jurisdiction even over

---

**10.** The alternative approach, which this Court rejects, requires a resurrection of the summary-plenary distinction and rests on an overly broad reading of *Katchen*. It requires a court to determine (1) whether the proceeding was summary or plenary on September 30, 1979, the last day of the Act; (2) if plenary, where the action could have been brought; and (3) whether the applicable law requires a jury trial. *In re Mozer*, 10 B.R. 1002, 1005–08 (Bankr.D.Colo.1981). As Judge McGuire points out, the test "appears to ignore Congress' intent when enacting the 1978 Bankruptcy Code" and would ultimately require a seventh amendment analysis under its third prong. *See Wolfe*, 68 B.R. at 86. There is not persuasive reason to require three steps rath-

er than one, especially when Congress has explicitly rejected the "summary-plenary" distinction.

**11.** Judge McGuire recognized that this claim was a related proceeding, and he followed the discretionary abstention procedures of 28 U.S.C. 1334(c)(1). *See Wolfe*, 68 B.R. at 83. In the interests of judicial economy, and of reducing the time and expenses involved in this dispute, the parties should consent to the trial of this Deceptive Trade Practices Act claim before Judge McGuire. Indeed, if a withdrawal of reference were filed, this Court would stay this collateral matter pending the resolution of the jury trial in the core proceeding before the bankruptcy court. *Cf. Holland*, 777 F.2d at 998–99.

"core" proceedings, *Carlton v. BAWW, Inc.*, 751 F.2d at 788, the Fifth Circuit has already cautioned against the indiscriminate filing and granting of motions to withdraw reference. In *Holland*, 777 F.2d 992, the court stated:

"Nevertheless, the district court's decision to hear a case like the present one, which will adjudicate the rights of the debtor and its creditors to insurance policy proceeds, must be based on a sound, articulated foundation. On remand, the district court must decide whether it is withdrawing the reference 'for cause,' 28 U.S.C. § 157(d), or transferring the case to the bankruptcy court.

"The posture of this case does not permit us to offer more than general principles that should guide the district court in determining whether to refer or withdraw the reference. Little precedent yet exists on this subject.... *Marathon* provides the outer boundary of original referred jurisdiction of bankruptcy court, but considerations of judicial economy also bear on the decision to withdraw the reference or refer to the bankruptcy court. *The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum-shopping and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process.*"

*Id.* at 998–99 (emphasis added).

Moreover, *Holland* also refers to 28 U.S.C. § 157(c)(1), which authorizes bankruptcy courts "to function much like magistrates as adjuncts to the district courts on matters that are merely 'related to' a bankruptcy." *Id.* at 999. Under this procedure, the bankruptcy judge is to "submit proposed findings of fact and conclusions of law to the district court," with any final order or judgment to be entered by the district judge, but only "after reviewing *de*

*novo* those maters to which any party has timely and specifically objected."

As Judge McGuire observed in *Wolfe, id.* at 84, it may be "duplicative and wasteful" for the bankruptcy court to conduct a jury trial on a related or non-core proceeding—without the consent of the parties—because of the § 157(c)(1) requirement for a *de novo* review by the district judge. Accordingly, although the determination must be made on a case-by-case basis, it may be appropriate for the bankruptcy judge to abstain as to claims based solely in state law if there is a jury demand, and if all parties do not consent to trial of this related matter in the bankruptcy court. Similarly, if a party moves to withdraw the reference under these circumstances, the district court may proceed with the disposition of this non-core, jury matter—or it may stay this proceeding for reasons of judicial economy (i) if there is a pending state court action involving the same claims, or (ii) if the remaining matters before the bankruptcy court may resolve this peripheral dispute. *Cf. PPG Industries, Inc. v. Continental Oil Co.*, 478 F.2d 674, 680 (5th Cir.1973).

However, these potential problems under § 157(c)(1) are not *necessarily* present if there is no jury demand in a "traditional" state law adversary proceedings. As *Holland* notes, *id.* at 999, the procedure of bankruptcy court recommendations, findings, and conclusions—with the final judgment being entered by the district court after *de novo* review—is similar to the procedure used in this district to handle the volume of petitions for writs of habeas corpus which are filed by state prisoners.[12] There, the magistrates make recommendations—either after a hearing or on the basis of the record—with a district judge entering the final judgment after a *de novo* review.[13]

---

**12.** It is also similar to the procedure used in this district for the administration of bankruptcy matters until Congress enacted "appropriate remedial legislation in response to the Supreme

Court's decision" in *Marathon*. See Misc.Order No. 33 (Dec. 23, 1982 and June 22, 1984).

**13.** See Local Rule 3.2(c); Misc.Order No. 13 (adopted March 18, 1977).

Applying these principles to the present case, and giving heed to the goals addressed in *Holland*—promoting judicial economy and uniformity, reducing forum shopping and confusion, expediting the bankruptcy process, etc.—different results are required in *M & E Contractors* and in *Satelco.*

■■■ *M & E Contractors:* The contract and negligence claims are, of course based solely in state law. A jury demand has been filed. The bankruptcy court has no jurisdiction of these state law claims, nor can it conduct a jury trial on these related matters without the consent of the parties. Accordingly, granting the motion to withdraw reference is proper under the teachings of *Holland.*

■■■ *Satelco:* The 19 separate collection suits [14] filed by the debtor against non-creditor defendants are also based solely in state law. However, no jury demand has been filed in any of these adversary proceedings. Indeed, the defendants have not even appeared in 15 of these cases; service has not been obtained in another; and, of the three defendants who have appeared, one has filed a motion to dismiss for want of jurisdiction. Applying the *Holland* strictures, it will further the prompt and least-expensive resolution of these non-core matters if the bankruptcy court simply proceeds under 28 U.S.C. § 157(c)(1), specifically:

(i) by submitting proposed findings of fact and conclusions of law to the district court for the entry of final default judgments, if proper, in the 15 cases in which no answer has been filed;

(ii) by submitting recommendations to the district court concerning the proper disposition of the pending jurisdictional motion;

(iii) by proceedings with non-jury trial in the remaining 3–4 adversary proceedings, with the final judgment to be entered by a district court after a *de novo* review of "those matters to which any party has timely and specificaly objected."

Finally, no specific referral of these matters under § 157(c)(1) is necessary since this district's Miscellaneous Order No. 33, effective August 3, 1984, makes a general referral of "all proceedings arising under Title 11 or arising in or related to a case under Title 11—for consideration and resolution consistent with law." *Cf. Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir. 1983).

## VI.  Conclusions

In *Wolfe,* the bankruptcy judge correctly held that he could conduct jury trials in core proceedings, and that a jury trial was proper in this case. Accordingly, the appeal is DENIED.

In *M & E Contractors,* the bankruptcy judge erred in holding that the contract claims involved in the adversary proceeding were core matters, but he correctly ruled that the bankruptcy court had no jurisdiction to conduct a jury trial in these matters absent the consent of the parties. In addition, referral of this matter under § 157(c)(1) would not be in the interests of judicial economy. Consequently, the motion to withdraw reference is granted.[15]

In *Satelco,* the bankruptcy judge correctly held that the 19 collection suits by the debtor against non-creditor defendants were related or non-core matters. However, under the *Holland* principles discussed above, judicial economy dictates that these adversary proceedings be handled by the bankruptcy court under

---

**14.** Six of these suits involve only $1,000; another five involve approximately $2,000–3,000; and two more involve claims of $10,000. The other six collection suits are for amounts ranging from $30,000 to $61,000.

**15.** However, *M & E Contractors* has requested a stay of the proceedings before this Court be-

cause there is an identical action pending in the state court. Because of this, the attorneys for the other parties—in order to reduce the time and expense of this dispute to their clients—have agreed that they would not oppose the stay and would, in addition, no longer maintain their motion to withdraw reference.

§ 157(c)(1). Therefore, the motion to withdraw reference is denied.